### In re BREWERY LIMITED PARTNER-SHIP, a Minnesota Limited Partnership, Debtor.

### Kathryn PAGE, Trustee of the Estate of Brewery Limited Partnership, a Minnesota Limited Partnership, Plaintiff,

### v.

### CONSOLIDATED TITLE AND AB-STRACT COMPANY, City of Duluth, Fitger's Inn Limited Partnership, and Fitger's Inn Management Company, Defendants.

Bankruptcy No. 5–87–427.
Adv. No. 5–89–9.

United States Bankruptcy Court,
D. Minnesota.

April 27, 1990.

---

Larry B. Ricke, Wagner, Johnston & Falconer, Minneapolis, Minn., for plaintiff.

Robert C. Maki, Duluth, Minn., Matthew L. Fling, Bloomington, Minn., for defendants.

## MEMORANDUM ORDER

ROBERT J. KRESSEL, Chief Judge.

This proceeding came on for hearing on cross-motions for summary judgment. Larry B. Ricke appeared for the plaintiff. Robert C. Maki appeared for defendant City of Duluth. Matthew L. Fling appeared for defendants Fitger's Inn Limited Partnership (FILP) and Fitger's Inn Management Company (FIMC). This court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 103(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(K). Based on the memoranda and arguments of counsel, and the file in this proceeding, I make the following memorandum order.

## FACTUAL BACKGROUND

The debtor, Brewery Limited Partnership, is a Minnesota limited partnership formed in December 1983 for the purpose of acquiring, developing, operating and managing a retail office complex in Duluth, Minnesota, known as "Fitger's on the Lake." In conjunction with its acquisition of the Fitger's property in December 1983, the debtor entered into two loan agreements. Under the first agreement, the First National Bank of Minneapolis loaned the debtor approximately $6,800,000.00. As security for the loan, the debtor granted to the Bank a combination mortgage, security agreement and fixture financing statement and an assignment of leases and rents. Both the mortgage and the assignment of rents were dated December 29, 1983, and were filed with the St. Louis County Recorder on December 30, 1983.

Under the second loan agreement, the City of Duluth, pursuant to an Action Grant Loan Agreement, loaned the debtor approximately $3,500,000.00. As security for the loan, the debtor granted to the City a combination mortgage, security agreement and fixture financing statement and an assignment of leases and rents.[1] Like

1. The assignment of rents provided in relevant part:

[T]he Borrower does further hereby grant, transfer and assign to the Assignee all of the rents, income, issues and profits ... now or hereafter accruing or owing from the Leases or otherwise as a result of any use, possession or occupancy of the Mortgaged Property or any part thereof, whether accruing before or after any foreclosure of the Mortgage or during the period of redemption therefrom. The Leases and all of said Rents are being hereby granted, transferred and assigned for the purpose of securing (collectively referred to as the Obligations Secured Hereby) the following:

(1) payment of all indebtedness evidenced by the Action Grant Loan Agreement

. . . . .

(2) payment of all other sums, with interest thereon, becoming due and payable to the Assignee pursuant to the covenants and agreements contained herein and in the Action Grant Loan Agreement and the Action Grant Mortgage;

(3) performance and discharge of each and every obligation, covenant and agreement of the Borrower contained herein and in the Action Grant Loan Agreement and the Action Grant Mortgage.

. . . . .

(4) *Remedies.* Upon or at any time after default by the Borrower in the payment or performance of any Obligations Secured Hereby, the Assignee may ...

. . . . .

(b) apply for ... the appointment of a receiver ...

. . . . .

(5) *Application of Rents.* All Rents collected by the Assignee, or by a receiver, shall be held and applied in the following order:
(a) to payment of all reasonable fees of the receiver, if any, approved by the court;
(b) to the repayment when due of all Tenant security deposits, with interest thereon, pursuant to the provisions of Section 504.20, Minnesota Statutes;
(c) to payment of all delinquent or current real estate taxes and special assessments payable with respect to the Mortgaged Property;

the mortgage and assignment of rents granted to the Bank, the mortgage and assignment of rents granted to the City were dated December 29, 1983, and were filed with the St. Louis County Recorder on December 30, 1983.

On or about October 5, 1984, the debtor entered into three separate commercial leases with FILP [2] to allow FILP to operate a hotel, restaurant, bar and lounge on a portion of the Fitger's property.

On December 2, 1987, the debtor filed a chapter 11 petition. At the time of filing, the debtor was in default under its loan obligations to the Bank and the City in the amounts of $6,870,783.00 and $3,554,222.00 respectively. The debtor's bankruptcy schedules estimated the market value of its interest in the Fitger's property at approximately $6,000,000.00. The debtor's schedules further reflected rent due from FILP under the commercial leases in the approximate amount of $570,000.00.

Shortly after the commencement of the debtor's chapter 11 case, both the Bank and the City moved for the appointment of a trustee and for relief from the automatic stay. By order dated March 22, 1988, I approved the parties' stipulation granting the Bank and the City relief from the stay for purposes of foreclosing their respective mortgages. The order further provided that neither the Bank nor the City could conduct a foreclosure sale prior to June 1, 1988.

On March 31, 1988, the Bank commenced a foreclosure by advertisement of its mortgage on the Fitger's property. At the fore-closure sale conducted on June 2, 1988, the Bank bid in the sum of $7,003,223.10.

On July 7, 1988, the City commenced a foreclosure by advertisement of its second mortgage on the Fitger's property. At the foreclosure sale conducted on August 30, 1988, the City bid in the sum of $3,634,-475.78, which represented the entire amount owed by the debtor to the City under the December 1983 loan agreement.

The debtor's six month redemption period from the Bank's foreclosure sale expired on December 2, 1988. Neither the debtor nor any junior lienholder, including the City, exercised the right of redemption pursuant to Minnesota Statutes §§ 580.23 and 580.24.

By a letter to the debtor dated February 27, 1989, the City purported to extend the applicable six month redemption period for an additional eighteen months from February 28, 1989. No party has exercised the right of redemption.

During the six month redemption period following the Bank's foreclosure, the debtor exercised its right to remain in possession of the property and collect rents. As of December 2, 1988, FILP owed the debtor approximately $1,050,800.00 in rent.

On February 27, 1989, FILP granted to the debtor a security interest in all of FILP's assets to secure past due rent of $1,017,030.40. UCC–1 statements were filed with the Secretary of State and the St. Louis County Recorder on March 1, 1989.

On May 3, 1989, the Bank commenced an unlawful detainer action against FILP.

(d) to payment of all premiums then due for the insurance required by the provisions of the Action Grant Mortgage;

(e) to payment of expenses incurred for normal maintenance of the Mortgaged Property; and

(f) to the Assignee in payment of the Obligations Secured Hereby in such order of application as the Assignee may elect; or, in the event that a foreclosure sale with respect to the Action Grant Mortgage shall have occurred, then as a credit to the amount required to redeem from such foreclosure sale, and if there be no such redemption, then to the Assignee absolutely.

*The rights and powers of the Assignee under this Assignment, and the application of the*

*Rents ... shall continue and remain in full force and effect both before and after commencement of any action or proceeding to foreclosure* [sic] *the Action Grant Mortgage, after the foreclosure sale of the Mortgaged Property in connection with the foreclosure of the Action Grant Mortgage, and until expiration of the period of redemption from any such foreclosure sale, whether or not any deficiency from the unpaid balance of the Obligations Secured Hereby exists after such foreclosure sale* (emphasis added).

**2.** FILP is a Minnesota limited partnership. FIMC, a Minnesota corporation, is FILP's sole general partner.

Thereafter, the Bank and FILP entered into a settlement agreement pursuant to which FILP agreed to voluntarily surrender its leasehold interest in the Fitger's property. FILP further agreed to convey to the Bank certain assets, including furniture, fixtures, equipment, licenses, permits, trade names, books, records, customer lists and service and supply contracts used in connection with FILP's operation of the hotel, restaurant and bar. The Bank agreed to pay FILP $700,000.00 for those assets. The Bank's delivery of the $700,-000.00 payment was to be made against delivery to the Bank of appropriate UCC–3 termination statements executed by Norwest Bank–Duluth, the debtor, and all other lienholders of record.

On May 22, 1989, the debtor's chapter 11 case was converted to a case under chapter 7. Plaintiff was appointed interim trustee on May 25, 1989 and serves as trustee pursuant to 11 U.S.C. § 702(d). On June 1, 1989, the trustee entered into an escrow agreement with the Bank, FILP and Consolidated Title, as escrow agent, pursuant to which the trustee released the estate's interest in FILP's assets by depositing UCC–3 termination statements in escrow, the Bank deposited the $700,000.00 purchase price into escrow, and FILP transferred its assets to the Bank. The escrow agreement further granted the bankruptcy estate a "replacement" lien on the sale proceeds in escrow, "with the same priority, order, dignity and effect of [the debtor's] existing lien on the assets of FILP to be sold to the Bank ..." In a Consent and Undertaking Agreement, the Bank agreed "to waive, surrender and relinquish to [the debtor] any and all claims to rent due and owing by FILP for the period prior to December 2, 1988." The Bank further waived any right to obtain distributions from the [debtor's] "bankruptcy proceeding." By order dated June 26, 1989, I authorized the trustee to enter into the escrow agreement, and approved the Consent and Undertaking Agreement.

On August 17, 1989, the trustee commenced this adversary proceeding, requesting a determination that the debtor's estate has a valid and perfected security interest in the FILP assets, that such security interest constitutes a valid and perfected security interest in the proceeds of the sale of the FILP assets held in escrow by defendant Consolidated Title and Abstract Company, and that the estate's interest is prior to and superior to the interests, if any, of the defendants. The trustee further requested that Consolidated Title be directed to turn over to her the sale proceeds held in escrow.

On September 15, 1989, the City of Duluth filed its answer and counterclaim, alleging that, as a result of the City's extension of the debtor's redemption period, the City retained its rights and powers under its assignment of rents, and hence, is entitled to all monies owed to the debtor as rent, including the $700,000.00 held in escrow by Consolidated Title. Accordingly, the City requested that Consolidated Title be directed to turn over to it the sale proceeds held in escrow.

On November 7, 1989, FILP and FIMC filed their answer, denying that the assets FILP transferred to the Bank were subject to a valid perfected security interest of the debtor. FILP and FIMC further denied that either the trustee or the City of Duluth has any interest in the $700,000.00 escrow fund superior to the interest of FILP. FILP and FIMC requested an order declaring the $700,000.00 escrow fund to be the sole property of FILP, free and clear of any interest of the debtor or the City, and directing Consolidated Title to release the funds to FILP.

On January 11, 1990, the City filed its amended answer and amended counterclaim. The City alleged in the alternative, as its first compulsory counterclaim, that the Bank waived its senior claim to rents, that the trustee was estopped from asserting any claim to the escrow fund by reason of the fraudulent manipulation of monies by the debtor's "control persons," or that the trustee's claim for rent was subordinated to the City's claim for rent under the doctrine of equitable subordination. In its second compulsory counterclaim, the City requested that the trustee be directed to pay the City from the escrow fund in par-

tial satisfaction of the obligations of certain non-party guarantors of the original mortgage and assignment of rents. On January 12, 1990, the City moved to join the guarantors as additional defendants, and to serve on those additional defendants its cross-claim against them. By order entered February 7, 1990, I denied the City's motion.

On January 31, 1990, the trustee filed a motion for summary judgment against the City of Duluth,[3] requesting a determination that the trustee has a first, valid and perfected security interest in the proceeds of sale of the FILP assets held by Consolidated Title, and that the City has no right, title or interest in those funds. That same day, the City filed its motion for summary judgment, requesting a determination that neither the debtor, the estate of the debtor, nor the trustee have any right, title or interest in the funds held by Consolidated Title. The City further requested that the proceeding be dismissed on the grounds that all defendants were "outside of the Court's subject matter jurisdiction."

In a separate motion filed on January 31, 1990, the trustee moved to strike or dismiss the City's answer and amended counterclaim. By order dated February 26, 1990, I ordered the City's Answer and Amended Counterclaim stricken.

## DISCUSSION

■ Summary judgment will be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ. Proc. 56(c). When deciding a motion for summary judgment, the court must view the facts and all reasonable inferences drawn from the facts in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142

(1970); *Foster v. Johns–Manville Sales Corp.*, 787 F.2d 390 (8th Cir.1986).

This dispute focuses on the relative rights as between the trustee and the City to the funds held in escrow. Under the terms of the escrow agreement, the trustee received a replacement lien on the escrow funds. That lien has the same priority, dignity and effect as the lien the debtor had on the assets ultimately transferred by FILP to the Bank. The debtor's lien on those assets arose as a result of the security interest granted to the debtor by FILP to secure past due rent obligations. The record indicates that that security interest was perfected. There is no evidence that any other party had a security interest or other lien on the FILP assets superior to that granted to the debtor. Therefore, the debtor appears to have had a first, valid and perfected security interest in the FILP assets. As a result, the trustee appears to have a first, valid and perfected lien on the sale proceeds of those assets.

On the other hand, the City claims an interest in the sale proceeds based on the mortgage and assignment of rents granted to the City by the debtor. In order to determine the nature and priority of the City's interest, if any, in the sale proceeds, I must examine the legal effects of the series of transactions beginning with the Bank's foreclosure and the City's failure to redeem the property at that foreclosure sale. The City argues that even if its failure to redeem resulted in forfeiture of its claim against the Fitger's property, it has a claim against the bankruptcy estate under its assignment of rents and its mortgage covenants. This argument requires that I determine first whether the City has a claim at all, in view of the fact that it bid in the entire amount owed to it by the debtor at its own foreclosure sale. Then I must

---

3. The trustee's motion is specifically denominated a motion for summary judgment against the City of Duluth. While the motion requests a determination "that Plaintiff has a first, valid and perfected security interest in the proceeds of the sale," the motion does not appear to seek summary judgment against FILP or FIMC, nor does the trustee's memorandum of law discuss FILP's or FIMC's rights, if any, to the sale pro-

ceeds. FILP and FIMC filed a memorandum of law opposing the City of Duluth's motion for summary judgment and supporting the trustee's motion. FILP and FIMC also requested that no determination be made with respect to the escrow fund as between the trustee and FILP and FIMC. Since that issue is not before me, I will not address the rights to the sale proceeds as between the trustee and FILP and FIMC.

address the City's entitlement to the sale proceeds under its assignment of rents and certain mortgage covenants.

### I. The Bank's Foreclosure Sale

■ Minnesota Statutes § 580.23, subd. 1, provides in part:

> When lands have been sold in conformity with the preceding sections of this chapter the mortgagor, the mortgagor's personal representatives or assigns, within six months after such sale, except as otherwise provided in subdivision 2 or section 582.032, may redeem such lands, as hereinafter provided, by paying the sum of money for which the same were sold, with interest from the time of sale

> .   .   .   .   .

Minnesota Statutes § 580.24 provides:

> If no such redemption be made by the mortgagor, the mortgagor's personal representatives or assigns, the senior creditor having a lien, legal or equitable, upon the mortgaged premises, or some part thereof, subsequent to the mortgage, may redeem within five days after the expiration of the redemption period specified in section 580.23 ...

Strict compliance with this statute is required of all lienholders. *Graybow–Daniels Co. v. Pinotti,* 255 N.W.2d 405, 407 (Minn.1977). Accordingly, if a junior lienholder fails to exercise its statutory right of redemption, that junior lienholder's interest in the subject property is forfeited. *Community Ins. Agency, Inc. v. Kemper,* 426 N.W.2d 471 (Minn.Ct.App.1988).[4]

■ The Bank foreclosed its mortgage by advertisement pursuant to Minnesota Statutes, chapter 580. The Bank's foreclosure sale occurred on June 2, 1988. The applicable six month redemption period expired on December 2, 1988. Under Minnesota Statutes § 580.24, the City had an additional five days from that date to re-

deem. By failing to do so, the City forfeited its interest in the Fitger's property.

The City concedes that it forfeited its claim *"against the [Fitger's] property"* by failing to redeem that property in the manner mandated by Minnesota Statutes § 580.24. (*See* City of Duluth's Response to Trustee's Motion for Summary Judgment, page 8 (emphasis in original)). However, the City seeks to establish a superior claim to the escrow fund pursuant to its assignment of rents or, alternatively, certain mortgage covenants. Before addressing the City's rights under its assignment of rents or its mortgage covenants, I must first determine whether the City has any claim whatsoever against the estate to which the escrow funds could be applied in full or partial satisfaction. The City is only entitled to some or all of the escrow funds if it has a claim against the bankruptcy estate.[5]

### II. The City's "Claim"

A "debt" is defined by the Bankruptcy Code as a "liability on a claim." 11 U.S.C. § 101(11). "Claim" means:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured

> .   .   .   .   .

11 U.S.C. § 101(4).

■ The City foreclosed its mortgage by advertisement pursuant to Minnesota Statutes, chapter 580. Minnesota Statutes

---

**4.** *See, also, Moore v. Penney,* 141 Minn. 454, 456, 170 N.W. 599, 600 (1919):

> ... Each lien stands by itself and is cut out unless redemption be made under it ... in order to preserve any rights under a junior lien, the junior creditor must redeem under it from the senior creditor who made the redemption next prior in time ...

In *Graybow–Daniels Co. v. Pinotti,* 255 N.W.2d 405 (Minn.1977), the Minnesota Supreme Court indicated that the rule stated in *Moore v. Penney* was still the law on the subject. *Graybow,* 255 N.W.2d at 407.

**5.** The City filed a general unsecured claim in the amount of $63,431.95 on July 28, 1989.

§ 580.225 provides that "[t]he amount received from foreclosure sale under this chapter is full satisfaction of the mortgage debt, except as provided in section 582.30." Minnesota Statutes § 582.30, subd. 2, provides that "[a] deficiency judgment is not allowed if a mortgage is foreclosed by advertisement under chapter 580, and has a redemption period of six months under § 580.23, subdivision 1 ..."[6]

At the foreclosure sale, the City bid in the entire amount owed to it by the debtor under the December 1983 loan agreement. Even if the City had not bid in the entire amount owed to it by the debtor, Minnesota Statute § 582.30, subd. 2, precludes the City from asserting a deficiency claim against the debtor. Under either interpretation, the City has no claim against the debtor. The City "purchased" the property at the foreclosure sale by paying the full amount of the debt owed to it by the debtor to the sheriff at the sale. The sheriff, in turn, paid the City that same amount in full satisfaction of the debt owed to the City by the debtor under the foreclosed mortgage.[7] The City chose to bid in the entire amount of the debtor's obligation at the foreclosure sale, thereby satisfying and extinguishing that obligation in its entirety.[8] Even if the City had bid in only a portion of the debt, it is barred by Minnesota's anti-deficiency statute from asserting any additional claim against the debtor under the mortgage. Accordingly, the City has no claim against the debtor, and hence, no right to payment from the estate or the escrow fund held by Consolidated Title.

III. The City's Assignment of Rents

■ Notwithstanding the fact that the City has no claim against the estate under its mortgage, it argues that it is entitled to the escrow funds pursuant to its assignment of rents. The City's argument is without merit for several reasons. First and foremost, the escrow fund is not rent. It is comprised of proceeds of FILP's sale of its assets to the Bank. Pursuant to the escrow agreement between the trustee, the Bank and FILP, the bankruptcy estate was granted a lien on the proceeds, apparently arising from the preexisting security interest the debtor held in all of FILP's assets to secure past due rent. However, this does not change the character of the escrow fund from sale proceeds to rents. Hence, the escrow fund is not rents, and, accordingly, cannot be subject to the City's assignment of rents.

■ Even if the escrow fund were rents, the City would have no claim to the escrow fund. As noted, the City's failure to exercise its redemption rights following the Bank's foreclosure sale extinguished the City's interest in the Fitger's property. As I stated in *Capital Realty Investor Tax Exempt Fund Limited Partnership v. Greenhaven Village Apartments of Burnsville Phase II Limited Partnership (In re Greenhaven Village Apartments of Burnsville Phase II Limited Partnership)*, 100 B.R. 465, 469–70 (Bktcy.D.Minn. 1989), an assignment of rents is a real property interest. Therefore, the City's failure to redeem resulted in forfeiture of the City's interest in the Fitger's property under both its mortgage and its assignment of rents.

■ Assuming for the moment that the escrow fund is rent, it should be noted that the City's assignment of rents specifically provides that the City's rights and powers

---

6. A mortgagee may seek to recover any deficiency from guarantors. *See Victory Highway Village, Inc. v. Weaver*, 480 F.Supp. 71, 74 (D.Minn. 1979), *aff'd*, 634 F.2d 1099 (8th Cir.1980) ("a mortgagee who uses the summary proceeding contained in M.S.A. § 580.23, Subd. 1, waives any right to obtain a deficiency judgment against the mortgagor, but is not precluded by § 580.23 from seeking a deficiency judgment against the guarantors"); *Miller & Schroeder, Inc. v. Gearman*, 413 N.W.2d 194 (Minn.App. 1987); *Nat'l City Bank v. Lundgren*, 435 N.W.2d 588 (Minn.App.1989).

7. Admittedly, no money actually exchanged hands. The transactions occurred entirely on paper and in theory.

8. Why the City chose to pay so much for property which was already in foreclosure, or why the City foreclosed at all, or even what interest the City actually purchased, is not entirely clear to me. Presumably, the City thought it gained some advantage by doing so. It made its choice and must live with its consequences.

under the assignment, and the application of rents,

> *shall continue and remain in full effect* both before and after commencement of any action or proceeding to foreclosure [sic] the Action Grant Mortgage, after the foreclosure sale of the Mortgaged Property in connection with the foreclosure of the Action Grant Mortgaged, and until expiration of the period of redemption from any such foreclosure sale, *whether or not any deficiency from the unpaid obligations secured hereby exists after such foreclosure sale* (emphasis added).

This language in the City's assignment of rents is derived from Minnesota's assignment of rents statute, Minnesota Statute § 559.17, which provides:

> Subdivision 1. A mortgage of real property is not to be deemed a conveyance, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure, except as permitted in subdivision 2. *The enforcement of an assignment of rents of the type described in subdivision 2 shall not be deemed prohibited by this subdivision, nor because a foreclosure sale under the mortgage has extinguished all or part of the mortgage debt.*
>
> Subd. 2. A mortgagor may assign, as additional security for the debt secured by the mortgage, the rents and profits from the mortgaged real property, if the mortgage:
>
> (1) Was executed, modified or amended subsequent to August 1, 1977;
>
> (2) Secured an original principal amount of $500,000 or more; and
>
> (3) Is not a lien upon property which was entirely homesteaded as agricultural property. The assignment may be enforced as follows:
>
> (a) If, by the terms of an assignment, a receiver is to be appointed upon the occurrence of some specified event, and a showing is made that the event has occurred, the court shall, without regard to waste, adequacy of the security, or solvency of the mortgagor, appoint a receiver who shall, with respect to the excess

cash remaining after application as provided in section 576.01, subdivision 2, apply it as prescribed by the assignment. If the assignment so provides, the receiver shall apply the excess cash in the manner set out herein from the date of appointment through the entire redemption period from any foreclosure sale. Subject to the terms of the assignment, the receiver shall have the powers and duties as set forth in section 576.01, subdivision 2.

> (b) If no provision is made for the appointment of a receiver in the assignment, the assignment shall be binding upon the assignor without regard to waste, adequacy of the security or solvency of the mortgagor, but only in the event of default in the terms and conditions of the mortgage, and only in the event the assignment requires the holder thereof to first apply the rents and profits received as provided in section 576.01, subdivision 2, in which case the same shall operate against and be binding upon the occupiers of the premises from the date of filing by the holder of the assignment in the office of the county recorder or the office of the registrar of titles for the county in which the property is located of a notice of default in the terms and conditions of the mortgage and service of a copy of the notice upon the occupiers of the premises. The holder of the assignment shall apply the rents and profits received in accordance with the terms of the assignment, and, if the assignment so provides, for the entire redemption period from any foreclosure sale. A holder of an assignment who enforces it in accordance with this clause shall not be deemed to be a mortgagee in possession with attendant liability.

> Nothing contained herein shall prohibit the right to reinstate the mortgage debt granted pursuant to section 580.30, nor the right to redeem granted pursuant to sections 580.23 and 581.10, and any excess cash, as that term is used herein, collected by the receiver under clause (a), or any rents and profits taken by the holder of the assignment under clause

(b), shall be credited to the amount required to be paid to effect a reinstatement or redemption.

Minnesota Statutes § 559.17 (emphasis added).

At first glance, the highlighted language in both the City's assignment and the statute purports to give the City a claim to rents even after its entire debt has been satisfied by foreclosure of its mortgage. I doubt this is the outcome the Legislature intended. Despite the absence of legislative history from which to glean legislative intent, I think an examination of the evolution of Minnesota's assignment of rents statute and the cases construing that statute indicate that the assignee under a valid assignment of rents may continue to collect rents after a foreclosure which fully satisfies its underlying debt only to the extent necessary to pay the expenses associated with maintaining the property, such as taxes and insurance, during the redemption period. Any other interpretation would entitle the assignee to a windfall neither contemplated nor intended by the Legislature.

Under the pre–1969 version of the assignment of rents statute, an assignee of rents was not entitled to possession of the rents without foreclosure, with two exceptions: (1) where the assignment of rents was intended to reimburse the mortgagee/assignee for payment of pre-foreclosure taxes, assessments, insurance, or necessary repairs, and (2) where the assignment was made after the mortgage for a separate consideration, and for the purpose of paying the mortgage debt, taxes, insurance, or repairs. These pre–1969 assignment of rents clauses were unenforceable after the foreclosure sale but before the expiration of the redemption period unless waste sufficient to warrant the appointment of a receiver was demonstrated.

The 1969 version of the statute eliminated the requirement that an assignment of rents clause be supported by separate and subsequent consideration. However, assignments of rent under this version of the statute were not distinguishable from traditional mortgages, since the mortgagee was not entitled to possession of either its mortgage interest or the rents prior to foreclosure. *New York Life Ins. Co. v. Bremer Towers*, 714 F.Supp. 414, 418 (D.Minn. 1989). As Chief Judge Alsop pointed out, the 1977 version of the statute changed this. "The second sentence of subdivision 1 states that the assignment is an interest which can with the appointment of a receiver, be possessory prior to foreclosure, and which can be enforced whether or not a foreclosure sale has extinguished the underlying mortgage debt." *Id.* at 418.

At issue here is the continuing viability of the City's assignment of rents after its foreclosure sale, which resulted in full satisfaction of its debt. In *Cross Companies v. Citizens Mortgage Inv. Trust*, 305 Minn. 111, 232 N.W.2d 114 (1975), the Minnesota Supreme Court found that the assignee of rents' rights under the assignment terminated upon a foreclosure sale for the full amount of the debt. However, this result was "compelled" by the fact that the post–1969 assignment of rents clause at issue in that case expressly provided that it would continue in effect during the redemption period to pay any deficiency resulting from the foreclosure sale. The court merely "gave effect to the express intention of the parties that the assignment of rents would terminate on full payment of the mortgage debt." *G.G.C. Co. v. First Nat'l Bank of St. Paul*, 287 N.W.2d 378, 382 (Minn.1979). The court reached the opposite result in *G.G.C.*, based on the fact that the assignment of rents clause in *G.G.C.* did not state that it would terminate on full payment of the underlying mortgage debt. In *G.G.C.*, the mortgagor, G.G.C., sought to restrain the mortgagee Bank from collecting rents from an apartment complex during the redemption period following the Bank's purchase of the property at a foreclosure by advertisement sale. The Minnesota Supreme Court held that the assignment of rents clause in the mortgage was enforceable during the redemption period for payment of any deficiency resulting from the foreclosure sale and for taxes, assessments, and other expenses.

I think the *G.G.C.* case, although decided under the pre–1977 version of Minnesota

Statutes § 559.17, illustrates the correct interpretation of the highlighted language in the statute and the City's assignment of rents. I think an assignment of rents will continue in effect after foreclosure, even if the foreclosure has fully extinguished the underlying mortgage debt, but only to the extent necessary to pay the ongoing expenses associated with maintaining the property, such as taxes, insurance, and repair costs, during the redemption period. This prevents the anomalous situation in which the mortgagee or its receiver is responsible for expenses of the property, but the debtor collects the rents and profits of the property. Not surprisingly, the City has failed to provide any evidence of its payment of any expenses associated with the property, probably because the debtor was responsible for expenses during the Bank's redemption period, and the property now belongs to the Bank, and the Bank is paying those expenses.[9] Therefore, there is no evidence before me to show that the City has incurred any expenses to which the escrow account, if it was rent, could be applied.

■ Finally, the City never took the necessary steps to enforce its assignment, so as to be entitled to possession of rents. In *Greenhaven,* I distinguished between the recording of an assignment of rents, which establishes the assignee's priority over subsequently acquired interests of good faith purchasers or lien creditors, and enforcement of an assignment by filing a notice of default with the appropriate county recorder or by obtaining a court-appointed receiver. The assignee of rents is not entitled to actual possession of rents until it has taken one of these two steps. In this case, the City's assignment of rents provides for the appointment of a receiver. The City never sought nor obtained appointment of a receiver before its assignment of rents terminated by its own terms upon expiration on February 28, 1989 of the six month redemption period following its August 30, 1988 foreclosure sale.[10] Therefore, the City was never entitled to possession of rents.

## IV. The City's Mortgage Covenants

■ The City argues that a foreclosing mortgagee may enforce mortgage covenants even after the full amount of the debt on its original loan has been paid. The City's argument is basically a claim for breach of contract—namely, breach of the covenants, including the covenant to pay the debt, contained in its mortgage agreement with the debtor. This claim is nothing more than a thinly veiled attempt on the City's part to circumvent the effects of the anti-deficiency statute. This it may not do.

## V. Subject Matter Jurisdiction

The City also moved for dismissal of this proceeding on grounds that the parties to the proceeding "are outside of the Court's subject matter jurisdiction." In phrasing its motion in this way, the City appears to confuse subject matter jurisdiction with personal jurisdiction. However, because the motion is denominated a motion to dismiss for lack of subject matter jurisdiction, I will treat it as such. It should be noted that the City's memorandum of law in support of its motions does not address the issue of subject matter jurisdiction.

---

**9.** During the redemption period following the Bank's foreclosure sale, the debtor exercised its right to remain in possession of the Fitger's property. To the extent expenses such as taxes and insurance accrued during that time and were not paid, those expenses constitute claims against the estate and not against the Bank.

**10.** By letter dated February 27, 1989, the City attempted to unilaterally extend the redemption period an additional eighteen months. Under this attempted extension, the redemption period would expire on or about August 28, 1990. I doubt this attempted extension of the redemp-

tion period by the City had any legal effect. As previously noted, strict compliance with the redemption statute is required. *Graybow–Daniels Co. v. Pinotti,* 255 N.W.2d 405 (Minn.1977). In addition, there is no evidence that the purported extension was supported by consideration. *See Grahek v. Skala,* 172 Minn. 422, 215 N.W. 839 (1927) (agreement to extend time to redeem from sale was wholly ineffective because there was no consideration for such agreement). Besides, as a result of the Bank's foreclosure, the City does not own any interest in the property capable of being redeemed.

■ The City's challenge to subject matter jurisdiction is apparently based on its erroneous assumption that once the automatic stay was terminated to allow the Bank and the City to proceed with their foreclosures, the Fitger's property ceased to be property of the estate. Therefore, the City argues, proceeds of that property are not within the jurisdiction of the bankruptcy court. This argument fails for two reasons. First, the proceeds at issue here are not proceeds from the sale of the Fitger's property, but rather, proceeds of the sale of FILP's assets to the Bank. Secondly, the termination of the stay did not terminate the debtor's interest in the Fitger's property, so as to remove the property, or the proceeds of its disposition, from the estate.

The district court has original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). The bankruptcy court is a unit of the district court. 28 U.S.C. § 151. Section 157(a) authorizes the district court to refer its § 1334 jurisdiction to the bankruptcy court. Pursuant to Local Bankruptcy Rule 103(b), this case and proceeding have been referred to this court. Therefore, bankruptcy court jurisdiction extends to this proceeding if it (1) arises under title 11, (2) arises in a case under title 11, or (3) is related to a case under title 11. 28 U.S.C. § 1334(b).

Section 1334(b) was copied verbatim from § 1471(b) of the 1978 Act. The legislative history of § 1471(b) concerning the "arising under title 11" language is, therefore, instructive. *Nat'l City Bank v. Coopers & Lybrand*, 802 F.2d 990 (8th Cir.1986).

The phrase "arising under" has a well defined and broad meaning in the jurisdictional context. By a grant of jurisdiction over all proceedings arising under title 11 the bankruptcy courts will be able to hear any matter under a provision of title 11.

H.R.Rep. No. 595, 95th Cong., 2d Sess. 445–46, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 6401.

■ Section 105(a) of the Bankruptcy Code provides:

No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from sua sponte, *taking any action or making any determination necessary or appropriate to enforce or implement court orders* ...

By order dated June 26, 1989, I authorized the trustee to enter into the escrow agreement with the Bank, FILP and Consolidated Title. Under the terms of that agreement, the bankruptcy estate was granted a lien on certain sale proceeds to be placed in escrow. The trustee now requests that I determine the scope of the lien created by my previous order by determining the validity and priority of that lien relative to the interests, if any, of the City. Therefore, this proceeding, in which the trustee seeks the interpretation of my June 26, 1989 order, arises under title 11. Hence, bankruptcy court jurisdiction extends to this proceeding under 28 U.S.C. § 1334(b). Also, the court has jurisdiction over the debtor's property and property of the estate. 28 U.S.C. § 1334(d).

■ In addition, 28 U.S.C. § 157(b)(1) provides that "Bankruptcy judges may hear and determine ... all core proceedings arising under title 11 ..." Core proceedings include "determinations of the validity, extent or priority of liens." 28 U.S.C. § 157(b)(2)(K). This proceeding, to determine the validity and priority of the trustee's replacement lien in the sale proceeds, is a core proceeding under § 157(b)(2)(K).

CONCLUSION

The trustee has a valid lien on the sale proceeds held in escrow by Consolidated Title. I find that the City has no claim to those escrow funds, since it has no claim against the debtor or the debtor's property. The City's forfeited its interest in the Fitger's property by failing to redeem that property after the Bank's foreclosure. Whatever claim the City may have had thereafter was extinguished by its bidding in the entire amount owed to it by the debtor at its own foreclosure sale. Nor does the City have any claim against the

escrow fund pursuant to its assignment of rents. The escrow fund is not rents. Even if it was, the City may not make a claim against the rents for expenses it never incurred. Finally, the City may not attempt to defeat the operation of the anti-deficiency statute by attempting to assert a claim against the debtor for breach of mortgage covenants. There being no issues of material fact as to the trustee's and the City's relative rights in and to the escrow fund held by Consolidated Title as escrow agent, the trustee is entitled to judgment as a matter of law.

THEREFORE, IT IS ORDERED:

1. The plaintiff's motion for summary judgment is granted;

2. Defendant City of Duluth's motion for summary judgment is denied;

3. Defendant City of Duluth's motion to dismiss for lack of subject matter jurisdiction is denied; and

4. The plaintiff has a valid interest in the sale proceeds held in escrow by defendant Consolidated Title and Abstract Company, which interest is superior to any interest of the City of Duluth.