Kathryn PAGE, Trustee of the Estate of Brewery Limited Partnership, a Minnesota Limited Partnership, Appellant,

v.

CITY OF DULUTH, Appellee,

Consolidated Title and Abstract Company, Fitger's Inn Limited Partnership, Fitger's Inn Management Company.

Kathryn PAGE, Trustee of the Estate of Brewery Limited Partnership, a Minnesota Limited Partnership,

v.

CITY OF DULUTH, Appellee,

Consolidated Title and Abstract Company

Fitger's Inn Limited Partnership, Fitger's Inn Management Company, Appellants.

Nos. 91–1212, 91–1221.

United States Court of Appeals, Eighth Circuit.

Submitted June 10, 1991.

Decided Sept. 19, 1991.

Larry B. Ricke, Minneapolis, Minn. and Matthew L. Fling of Bloomington, Minn., for appellant.

Robert C. Maki, Duluth, Minn., for appellee.

Before LAY, Chief Judge, RONEY,* Senior Circuit Judge, and WOLLMAN, Circuit Judge.

LAY, Chief Judge.

In December, 1983, Brewery Limited Partnership ("Brewery"), a Minnesota limited partnership, was formed for the purpose of acquiring, operating, managing, and developing a hotel and retail complex in Duluth, Minnesota, known as "Fitger's on the Lake." Brewery acquired the property in the summer of 1983. In conjunction with its acquisition of the property, Brew-

* The HONORABLE PAUL H. RONEY, Senior Circuit Judge for the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

ery entered into two loan agreements on December 29, 1983. Under the first loan agreement, Brewery borrowed approximately $6,800,000.00 from the First National Bank of Minneapolis ("Bank") and granted to the Bank a combination mortgage, security agreement and fixture financing statement and an assignment of leases and rents as security for the loan.[1]

Brewery also borrowed approximately $3,500,000.00 from the City of Duluth ("City") pursuant to an Action Grant Loan Agreement. As security for this loan, Brewery granted to the City a combination mortgage, security agreement, and fixture financing statement and an assignment of leases and rents.[2]

On October 5, 1984, Brewery entered into three commercial leases with Fitger's Inn Limited Partnership ("FILP"), a Minnesota limited partnership.[3] Fitger's Inn Management Company ("FIMC"), a Minnesota corporation, is the sole general partner of FILP. By December 2, 1987, FILP owed Brewery rent in the amount of $570,000.00.

On December 2, 1987, Brewery filed a Chapter 11 petition. At that time Brewery was in default under the Bank and City loans in the amounts of $6,870,783.00 and $3,554,222.00 respectively.

By order dated March 22, 1988, the bankruptcy court granted the Bank and City relief from the automatic stay to allow them to foreclose on their mortgages. On June 2, 1988, after the Bank commenced a foreclosure by advertisement of its mortgage on Brewery's property, the Bank conducted a foreclosure sale and purchased the property for $7,003,223.10. Under Minnesota law, Brewery's redemption period expired on December 2, 1988, exactly six months after the foreclosure sale. Neither Brewery nor any junior lienholder, including the City, exercised its right of redemption within the statutory period.

The City commenced its own foreclosure by advertisement on July 7, 1988.[4] The foreclosure sale was conducted on August 30, 1988, and the City purchased the property for $3,634,475.78, which represented the entire amount of the debt owed to the City under the loan agreement.[5]

Brewery retained possession of the property and collected rent during the redemption period following the Bank's foreclosure sale. On February 27, 1989, FILP granted to Brewery a security interest in all of its assets to secure past due rent in the amount of $1,017,030.40. U.C.C.–1 statements were filed two days later.

When the Bank commenced an unlawful detainer action against FILP, the Bank and FILP entered into a settlement agreement pursuant to which FILP agreed to relinquish its leasehold interest in the Fitger's property and to sell its assets to the Bank for $700,000.00. The Bank agreed to release its right to rent under its assignment of leases and rents and to waive its right to participate as a creditor in Brewery's bankruptcy proceeding.

Brewery's Chapter 11 case was converted into a Chapter 7 case on May 22, 1989. On June 1, 1989, the Bank, the trustee, FILP and Consolidated Title and Abstract Company, an escrow agent, entered into an escrow agreement, and the proceeds from the sale of FILP's assets ($700,000.00) were deposited into an escrow account. Pursuant to this agreement, the trustee agreed to release its lien on FILP's assets and in return received a replacement lien on the proceeds from the sale of FILP's assets.

The trustee commenced this adversary proceeding, seeking a determination that Brewery's estate had an exclusive right to

---

1. On December 30, 1983, the Bank perfected its mortgage and assignment of leases and rents.

2. The City, like the Bank, perfected its mortgage and assignment of leases and rents on December 30, 1983.

3. FILP leased a portion of Brewery's property to operate a hotel, restaurant, bar and lounge.

4. The City allegedly was concerned about the validity of the Bank's foreclosure sale.

5. The City, however, did not obtain title to the Fitger's property because the bank already had purchased the property at the foreclosure sale held on June 2, 1988.

the funds held in escrow. The trustee claimed that the estate of Brewery had a valid and perfected security interest in the sale proceeds held in escrow and that the estate's interest was superior to any interests of the City, FILP and FIMC. The City asserted that it had an exclusive right to the escrow fund pursuant to its mortgage covenants and assignment of rents. FILP and FIMC claimed that the funds held in escrow were the sole property of FILP.

The bankruptcy court granted summary judgment in favor of the trustee and denied the City's motion for summary judgment. *In re Brewery Ltd. Partnership*, 113 B.R. 992 (Bankr.D.Minn.1990). The bankruptcy court held that the trustee had a valid lien on the funds held in escrow. The court found that the City's claim to the escrow fund was barred by the Minnesota anti-deficiency statute. *Id.* at 999. The court also held that the City had no interest in the escrow fund under its assignment of leases and rents because the funds held in escrow were *sale proceeds rather than rents*. *Id.* In addition, the court found that the City's argument that it is entitled to the escrow fund pursuant to its mortgage covenant "is nothing more than a thinly veiled attempt on the City's part to circumvent the effects of the anti-deficiency statute." *Id.* at 1002.[6]

The district court reversed. Memorandum Order, Civ. No. 5–89–9 (D.Minn. Dec. 28, 1990). The court held that Minnesota's anti-deficiency statute did not bar the City's claim to the escrow fund for breach of mortgage covenants. *Id.* at 7. The court also found that the City's assignment of rents applied because the "funds arose from a guaranty of the lessee's obli-

gations." *Id.* at 8. The district court then concluded that the City was entitled to the escrow fund under its assignment of rents to secure the performance of its mortgage covenants. *Id.* This appeal followed.

## I. ANTI–DEFICIENCY STATUTE

■ The trustee, FILP, and FIMC argue that the City's claim to the escrow fund is barred by the Minnesota anti-deficiency statute.[7] Although the City recognizes that it is barred from obtaining a deficiency judgment against Brewery, the City contends that under Minnesota law, the anti-deficiency statute does not preclude it from asserting a claim to the escrow fund based on breach of mortgage covenants that do not concern the mortgage debt.[8] *See Kooda Bros. Constr. v. United Fed. Sav. & Loan Ass'n of Alexandria*, 400 N.W.2d 407 (Minn.Ct.App.1987) (holding that a mortgagee could enforce mortgage covenants requiring the mortgagors to keep the property free of encumbrances even after it foreclosed by advertisement and purchased the property for the full amount of the mortgage debt because the mortgage covenants concerned title to the mortgaged property rather than repayment of the debt).

Based on the holding in *Kooda*, the district court found that Minnesota's anti-deficiency statute did not bar the City's claim for breach of mortgage covenants. We respectfully disagree with the district court. We conclude that the City's claim to the escrow fund is barred under Minnesota's anti-deficiency statute. The City foreclosed its mortgage by advertisement and bid in the entire amount of the mortgage debt at the foreclosure sale.[9] We agree

---

6. The bankruptcy court also approved a settlement between the trustee, FILP and FIMC pursuant to which it ordered Consolidated Title and Abstract Company to distribute $75,000 of the escrow fund to FILP and the balance, together with accrued interest, to the trustee.

7. Minnesota Statutes § 582.30, subd. 2 (1990) states in relevant part that "[a] deficiency judgment is not allowed if a mortgage is foreclosed by advertisement under chapter 580, and has a redemption period of six months under section 580.23, subdivision 1...."

8. The City contends that Brewery breached its covenant to the City to "pay the principal and interest, when due, of any and all prior mortgages ... so as to prevent any Event of Default from occurring." App. at 61.

9. Admittedly, the City did not receive title to the property because the Bank already had purchased the property at its own foreclosure sale. The City also lost its interest in the mortgaged property by failing to redeem under the Bank's foreclosure sale.

with the bankruptcy court that the City has no claim to the escrow fund by virtue of Brewery's alleged breach of mortgage covenants.[10] To hold otherwise would circumvent the purpose of the anti-deficiency statute by allowing mortgagees or assignees to receive more than they were entitled to under the note and mortgage. In essence, the City is attempting to satisfy a mortgage debt that already has been satisfied. The City claims that it is entitled to the funds held in escrow as damages for Brewery's breach of mortgage covenants. The damages the City seeks are directly related to the mortgage debt. The mortgage debt, however, was extinguished when the City bid in the entire amount of the mortgage debt at its foreclosure sale.

## II. ASSIGNMENT OF RENTS

Notwithstanding the fact that the City has no claim to the escrow fund under its mortgage covenants, the City also contends that it is entitled to the escrow fund under its assignment of rents,[11] which secured repayment of the funds loaned to Brewery pursuant to the Action Grant Loan Agreement.

### A. *Character of the Escrow Fund*

Both the bankruptcy court and the district court found that the funds held in escrow are not rents. The escrow fund contains the proceeds from the sale of collateral pledged by the tenant, FILP, to secure the payment of back rent. However, the money was never tendered as rent but was paid by the Bank in a settlement to obtain possession of the property and to remove the tenant. Nonetheless, this fact does not preclude the City's claim under the assignment of rents if, as the district court held, the City had an assignment of rent guaranties. The escrow fund arose from a guaranty of FILP's obligation to pay rent. The escrow fund contains the proceeds from the sale of FILP's assets to the Bank. FILP previously had given Brewery a security interest in its assets to secure its rental obligation. Thus, the City has an assignment of guaranty of FILP's obligation to pay rent.

### B. *The City's Failure to Redeem*

■ Pursuant to Minnesota Statutes § 580.24, a junior creditor has the right to redeem from the senior creditor's foreclosure sale within five days after the expiration of the debtor's redemption period.[12]

---

10. We find *Kooda* to be distinguishable from this case. In *Kooda,* the foreclosing mortgagee brought an indemnity claim against the mortgagors for breach of mortgage covenants against encumbrances. The indemnification claim was related to the amount of the mechanic's liens on the property rather than the mortgage debt. The policy of the anti-deficiency statute was not implicated because the mortgagee enforced mortgage covenants that were not affected by the foreclosure sale and that posed no concern for lack of fair value. The mortgagors' notice of the foreclosure sale, or lack thereof, did not affect the mortgagors' liability or obligation to remove the mechanic's liens. In the present case, however, the City seeks damages which are directly related to the mortgage debt. Thus, the anti-deficiency statute is applicable. Moreover, in *Kooda,* the mechanic's liens were filed after the mortgages were executed and after the mortgagors swore by affidavit that there were no liens on the property. In this case, the City was aware that the Bank held a first mortgage on the property when it entered into the loan agreement with Brewery and thus knew it was taking a risk that the value of the underlying collateral would not cover both the first and second mortgages in the event of a default.

11. The City's assignment of rents provides as follows:

> [Brewery] does hereby ... assign to the [City] all of [its] right, title and interest ... in and to all existing leases, if any, and any future leases covering all or any part of the Mortgaged Property ... and any guaranties of the lessees' obligations under any thereof.... [Moreover, Brewery] ... does further hereby ... assign to the [City] all of the rents ... now or hereafter accruing or owing from the Leases.... The Leases and all of said Rents are being hereby ... assigned for the purpose of securing ... the following:
> (1) payment of all indebtedness evidenced by the Action Grant Loan Agreement ...;
> ....
> (3) performance and discharge of each and every obligation, covenant and agreement of [Brewery] contained herein and in the Action Grant Loan Agreement and the Action Grant Mortgage.

App. at 82–83.

12. Section 580.24 provides:

> If no such redemption be made by the mortgagor, the mortgagor's personal representatives or assigns, the senior creditor having a

It is well settled under Minnesota law that a junior creditor who fails to redeem under a senior creditor's foreclosure sale forfeits his or her interest in the subject property. In *Moore v. Penney*, 141 Minn. 454, 170 N.W. 599 (1919), the Minnesota Supreme Court stated:

> Each lien stands by itself and is cut out unless redemption be made under it. If a creditor who holds two liens redeems under his senior lien and wishes to preserve and enforce his junior lien, he must also redeem under the junior lien even if it be next in line.

*Id.* at 456, 170 N.W. at 600; *see also Graybow–Daniels Co. v. Pinotti*, 255 N.W.2d 405 (Minn.1977).

■ The bankruptcy court held that the City had no claim to the escrow fund because it failed to redeem under the Bank's foreclosure sale. The district court did not address this issue. We agree with the bankruptcy court that the City's failure to redeem is fatal to the City's claim.

The City's assignment of rents is an interest in real property. *See In re Greenhaven Village Apartments of Burnsville Phase II Ltd. Partnership*, 100 B.R. 465, 469–70 (Bankr.D.Minn.1989); *In re Metro Square*, 106 B.R. 584, 588 (D.Minn.1989). By failing to redeem under the Bank's fore-closure sale, the City forfeited any interest it may have had in rents or rent guaranties under the assignment of rents.[13] This for-feiture was effective on December 7, 1988.[14] The escrow fund, however, was not established until June 1, 1989. Thus, as a matter of law, the City does not have an interest in the escrow fund pursuant to its assignment of rents because the escrow fund did not exist until more than six months after the City's assignment of rents was extinguished by its failure to redeem.

The City attempts to justify its claim by arguing that its failure to redeem only cut off its lien on future rents from the real estate, but did not cut off its lien on ac-crued back rent. Aside from the fact that the escrow fund was not established until several months after the City's redemption period expired, this argument overlooks the fact that the City's assignment of rents was completely extinguished on December 7, 1988.[15]

Judgment reversed.

---

lien, legal or equitable, upon the mortgaged premises, or some part thereof, subsequent to the mortgage, may redeem within five days after the expiration of the [debtor's six month] redemption period ...; and each sub-sequent creditor having a lien in succession, according to priority of liens, within five days after the time allowed the prior lienholder, respectively, may redeem by paying the amount aforesaid and all liens prior to the lienholder's own held by the person from whom redemption is made; provided that no creditor shall be entitled to redeem unless within the period allowed for redemption the creditor file for record notice of intention to redeem with the county recorder or registrar of titles of each county where the mortgage is recorded.

Minn.Stat. § 580.24 (1990).

**13.** The City concedes that it forfeited its interest in the property under the mortgage by not re-deeming under the Bank's foreclosure sale.

**14.** The debtor's redemption period expired on December 2, 1988, and the City's redemption period expired five days later.

**15.** The City would have no interest in the es-crow fund under its assignment of rents even if it had redeemed under the Bank's foreclosure sale because it obtained full satisfaction of the underlying mortgage debt through foreclosure. *Compare Cross Cos. v. Citizens Mortgage Inv.*, 305 Minn. 111, 232 N.W.2d 114 (1975) (holding that the mortgagee had no right to rents under its assignment of rents during the redemption period because it purchased the property for the full amount of the mortgage debt at its fore-closure sale) *with G.G.C. Co. v. First Nat'l Bank of St. Paul*, 287 N.W.2d 378 (Minn.1979) (hold-ing that the assignment of rents clause con-tained in the mortgage was enforceable during the period of redemption for the purpose of securing the $300,000 deficiency existing after foreclosure of the mortgage). Moreover, the City has failed to allege that it incurred any expenses related to the property during the re-demption period. *See G.G.C. Co.*, 287 N.W.2d at 382–83 (holding that an assignment of rents clause in a mortgage is enforceable after fore-closure during the redemption period to secure any deficiency and to pay any expenses associat-ed with maintaining the property).