**Mary DOE, et al., Appellants,**

v.

**F.P., Respondent,**

**Diocese of Winona, Respondent.**

**No. CX–03–333.**

Court of Appeals of Minnesota.

Aug. 19, 2003.

J. Poage Anderson, Diane M. Odeen, Nichols, Kaster & Anderson, PLLP, Minneapolis, for appellants.

Robert L. McCollum, Teri E. Bentson, McCollum, Crowley, Vehanen, Moschet & Miller, Ltd., Bloomington, for respondent F.P.

George F. Restovich, Bruce K. Piotrowski, George Restovich & Associates, Rochester, for respondent Diocese of Winona.

Mike Hatch, Attorney General, John S. Garry, Assistant Attorney General, St. Paul, for amicus curiae State of MN.

Considered and decided by HARTEN, Presiding Judge, WILLIS, Judge, and WRIGHT, Judge.

## OPINION

HARTEN, Judge.

Based on the sexual relationship between appellant Mary Doe and respondent F.P., a Catholic priest of respondent Diocese of Winona (the diocese), Mary Doe and her husband, appellant John Doe, brought claims against respondents for sexual abuse/sexual exploitation, intentional infliction of emotional distress, and loss of consortium. They also asserted claims against the diocese for negligent hiring and retention, negligent supervision, and strict liability, and a claim against F.P. for breach of fiduciary duty.

Appellants moved for leave to add a claim for punitive damages. Respondents moved for summary judgment. The district court denied appellants' motion and granted summary judgment to respondents on all claims. Appellants challenge the denial of their motion; the summary judgment granted on the claim under Minn.Stat. § 148A.03 (2002); the dismissal of claims under Minn.Stat. § 609.344, subd. 1(*l*) (2002), and Minn.Stat. § 609.345, subd. 1(*l*) (2002), based on the conclusion that those statutes facially violate the Establishment Clause of the United States Constitution, and the dismissal of the derivative claims.[1]

## FACTS

Appellants John and Mary Doe and their three young children were members of the Catholic parish in Currie, Minnesota. Mary Doe worked part-time as a musician for the parish.

In summer 1987, F.P., a priest, was assigned to the Currie parish. He got to know Mary Doe in her capacity as a musi-

---

1. Appellants do not challenge the dismissal of their non-statutory claims for breach of fidu-
ciary duty and intentional infliction of emotional distress.

cian and became a friend of the Doe family. F.P. and Mary Doe met weekly to plan the music for services. They developed what both regarded as a close friendship; in F.P.'s words, they "fell in love" and mutually disclosed intimate details of their lives: in F.P.'s case, these included his sexual relationships with other women; in Mary Doe's case, they included her disappointing involvement with the charismatic movement, her fears of alcoholism, and her dissatisfaction with her marriage. F.P. advised Mary Doe to see a counselor for her family problems and a substance abuse expert for her alcoholism; he also recommended a spiritual advisor for her. Mary Doe saw all three of these professionals on an ongoing basis. The sexual component of the relationship between Mary Doe and F.P. began with hugs and had progressed to sexual touching by 1992.

In July 1993, F.P. was transferred from Currie to Mankato, about 90 miles away. F.P. visited the Doe family in Currie about once a month; Mary Doe, sometimes with a member or members of her family, also visited him in Mankato. Many of these visits involved sexual contact between F.P. and Mary Doe. The relationship ended in 1998, after Mary Doe discovered that F.P. was sexually involved with another woman. She and her husband eventually brought this action against F.P. and the diocese. The district court dismissed the action, and this appeal followed.

## ISSUES

1. Did F.P. provide psychotherapy to Mary Doe within the meaning of Minn. Stat. § 148A.01, subd. 6 (2002)?

2. In their brief, appellants also address the application of the Free Exercise Clause of the United States Constitution and of the Freedom of Conscience provision of the Minnesota Constitution, which incorporates the federal Free Exercise Clause, although they concede that respondents never argued that the statute violated the Free Exercise Clause. Nor did

2. Do Minn.Stat. § 609.344, subd. 1(*l*) (2002), and Minn.Stat. § 609.345, subd. 1(*l*) (2002), violate the Establishment Clause of the United States Constitution?[2]

## ANALYSIS

### 1. Summary Judgment on Section 148A.02 Claim

On appeal from summary judgment, this court asks whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). The district court granted respondents summary judgment on appellants' claim under Minn.Stat. § 148A.02 (2002), alleging that F.P. was practicing psychotherapy in his relationship with Mary Doe.

> "Psychotherapist" means a physician, psychologist, nurse, chemical dependency counselor, social worker, member of the clergy, marriage and family therapist, mental health service provider, or other person, whether or not licensed by the state, who performs or purports to perform psychotherapy.

Minn.Stat. § 148A.01, subd. 5 (2002). "'Psychotherapy' means the professional treatment, assessment, or counseling of a mental or emotional illness, symptom, or condition." *Id.,* subd. 6 (2002). A cause of action may be brought against a psychotherapist for sexual contact that occurred

> (1) during the period the patient was receiving psychotherapy from the psychotherapist; or

the district court address either the application of the federal Free Exercise Clause or the Minnesota Constitution. Therefore, since respondents did not raise these issues and the district court did not address them, they are not before this court. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988).

(2) after the period the patient received psychotherapy from the psychotherapist if (a) the former patient was emotionally dependent on the psychotherapist; or (b) the sexual contact occurred by means of therapeutic deception.

Minn.Stat. § 148A.02.

It is not a defense to the action that sexual contact with a patient occurred outside a therapy or treatment session or that it occurred off the premises regularly used by the psychotherapist for therapy or treatment sessions.

*Id.* The Minnesota Supreme Court recently addressed a claim brought against a member of the clergy as a result of a sexual relationship under a similar law, Chapter 148B, governing unlicensed mental health practitioners. " 'Unlicensed mental health practitioner' * * * includes * * * (3) clergy who are providing mental health services that are equivalent to those defined in subdivision 4." *Odenthal v. Minn. Conference of Seventh–Day Adventists,* 649 N.W.2d 426, 437 (Minn.2002) (quoting Minn.Stat. § 148B.60, subd. 3 (1998)).

Subd. 4. "Mental health services" means psychotherapy and the professional assessment, treatment, or counseling of another person for a cognitive, behavioral, emotional, social, or mental condition, symptom, or dysfunction, including intrapersonal or interpersonal dysfunctions.

*Id.* (quoting Minn.Stat. § 148B.60, subd. 4 (1998)). The supreme court based its determination that a clergy member "provided services equivalent to psychotherapy" within the meaning of Minn.Stat. § 148B.60 on several factors: (1) the cleric referred to his sessions with a couple as "marital counseling"; (2) the meetings with the couple varied from weekly to monthly over two years; (3) the cleric brought third parties to the counseling sessions to assist the couple with their marriage problems; (4) he discussed his psychological coursework and used psychological terminology; (5) he conducted psychological and personality examinations of the couple and assessed their personalities; (6) he attempted to modify one party's behavior; and (7) he challenged the opinions of professional counselors, saying that they did not understand the situation as well as he did and that his advice and approach were superior to theirs. *Id.* at 438–39.

None of these factors is present here. F.P. referred to himself and Mary Doe as "friends"; she spoke of him as her friend and of their relationship as between equals. During the period that F.P. and Mary Doe had regular weekly meetings, the meetings were for the purposes of liturgy planning or choir practice. F.P. repeatedly advised Mary Doe to seek counseling from professionals—not from himself—regarding her depression and her alcohol use, and she often discussed with him what her professional counselors had told her. F.P. had no training in counseling or psychology. When asked if he counseled parishioners going through a death in the family, he said he would "visit with them and be with them in their pain"; when asked if he counseled parishioners about substance abuse, he said, "If they came to me, I would talk with them and refer them." F.P. also testified about his own counseling, using the term to mean scheduled, compensated appointments with a professional psychologist or psychiatrist. He conducted no psychological or personality testing of Mary Doe or of anyone else. He did not provide "professional treatment, assessment, or counseling of a mental or emotional illness, symptom, or condition" within the meaning of Minn. Stat. § 148A.01, subd. 6, and Minn.Stat.

§ 148A.02. Their communications did not come within the statutory meaning of psychotherapy.

Mary Doe claimed that F.P. counseled her, but she defined counseling as, "[Y]ou just simply go talk to someone about your personal problems." In her deposition, she referred to F.P. as a friend of her and her family and to their relationship as mutual and between equals. She testified that, when their friendship began, F.P. shared with her information about his sexual activities with other women in parishes to which he had previously been assigned. She also testified that when, near the end of their relationship, she discovered that F.P. was sexually involved with another woman, she was hurt; F.P. testified that she was jealous.

We conclude that the district court did not err in granting respondents summary judgment on appellants' chapter 148A claim that F.P. was practicing psychotherapy in his relationship with appellant and, accordingly, affirm the district court as to that issue.

### 2. Constitutionality of Sections 609.344, Subdivision 1(*l*), and 609.345, Subdivision 1(*l*)

■ Minnesota statutes are presumed constitutional, and this court's power to declare a statute unconstitutional should be exercised with extreme caution. *In re Haggerty,* 448 N.W.2d 363, 364 (Minn. 1989). Determining a statute's constitutionality is a question of law. *Hamilton v. Comm'r of Pub. Safety,* 600 N.W.2d 720, 722 (Minn.1999).

Sexual penetration is third degree criminal sexual conduct and sexual contact is fourth degree criminal sexual conduct when committed by a member of the clergy either

(i) * * * during the course of a meeting in which the complainant sought or received religious or spiritual advice, aid, or comfort from the actor in private; or

(ii) * * * during a period of time in which the complainant was meeting on an ongoing basis with the actor to seek or receive religious or spiritual advice, aid, or comfort in private.

Minn.Stat. § 609.344, subd. 1(*l*) (2002); Minn.Stat. § 609.345, subd. 1(*l*) (2002). The district court found that these statutes facially violate the Establishment Clause of the United States Constitution. The statutes are before us in a civil context. *See Brett v. Watts,* 601 N.W.2d 199, 202 (Minn.App.1999) (Minnesota law recognizes cause of action for personal injury based on sexual abuse), *review denied* (Minn. 17 Nov. 1999). Minn.Stat. § 541.073, subd. 1 (2002), defines the civil action for sexual abuse by reference to sections 609.342 to 609.345 of the criminal law.

■ The Establishment Clause provides that "Congress shall make no law respecting an establishment of religion * * *." *See Odenthal,* 649 N.W.2d at 434–35 (quoting U.S. Const. amend I). Whether a government action violates the Establishment Clause is controlled by the three factors set out in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971).[3] The state action "must have a

---

**3.** *But see Bollard v. Cal. Province of Soc'y of Jesus,* 196 F.3d 940, 948 n. 2 (9th Cir.1999) ("We realize that dissatisfaction with the *Lemon* test has led several Justices to advocate alternative analytical frameworks. A new Establishment Clause test may well be on the horizon. Still, because the Court has not yet reached consensus on *Lemon's* successor, we continue to apply its test." (citations omitted)); *Amico v. New Castle County,* 101 F.R.D. 472, 494 (D.Del.1984) ("While the Supreme Court has recently warned that this three-part test should not be mechanically applied in this sensitive area, the test remains a useful

secular purpose, must neither inhibit nor advance religion in its primary effect, and must not foster excessive governmental entanglement with religion." *Odenthal,* 649 N.W.2d at 435 (citing *Lemon,* 403 U.S. at 612–13, 91 S.Ct. at 2111). The district court concluded that sections 609.344, subdivision 1(*l*), and 609.345, subdivision 1(*l*), foster excessive entanglement because, to enforce these provisions, courts must determine whether the "advice, aid, or comfort" provided by a member of the clergy in private was "religious or spiritual."

No Minnesota case is directly on point, but *Odenthal* recently addressed the entanglement prong of the *Lemon* test. The supreme court rejected the argument that,

> because we will have to determine what aspects of the counseling relationship are religious and what aspects are secular, the court will become entangled in religion. However, [defendant] fails to identify how determining whether a person is providing "assessment, treatment, or counseling" [Minn.Stat. § 148B.60, subd. 4, definition of mental health services] for the conditions described in the statute requires any inquiry into the religious aspect of the relationship. Therefore, we see no need to parse out secular and religious counseling to apply this definition, and its application does not alter or impinge upon the religious character of the relationship. Therefore, applying the statutory definition of mental health services does not excessively entangle the courts in religion.

*Id.* at 438 (quotation and citation omitted). Analogously, for us to determine whether the advice, aid, or comfort sought or received by a victim from a member of the clergy was religious or spiritual within the

meaning of Minn.Stat. § 609.344, subd. 1(*l*), and Minn.Stat. § 609.345, subd. 1(*l*), would appear not to excessively entangle a court in religion.

Whether a communication is of a religious or spiritual nature is a question of fact frequently addressed by the courts in the context of the application of the clergy privilege. *See, e.g., State v. Rhodes,* 627 N.W.2d 74, 85 (Minn.2001) (basing determination that communication was not protected by clergy privilege in part on finding that content of communication was not religious); *State v. Black,* 291 N.W.2d 208, 216 (Minn.1980) (basing determination that clergy privilege did not apply on finding that content of communication was not religious); *State v. Orfi,* 511 N.W.2d 464, 470 (Minn.App.1994) (basing determination that clergy privilege did apply on application of three factual criteria to find that conversations between defendant and two ministers were for the purpose of seeking religious or spiritual advice, aid, or comfort), *review denied* (Minn. 15 March 1994).

Respondents argue that the very structure of sections 609.344, subd. 1(*l*), and 609.345, subd. 1(*l*), demonstrates that clergy are unconstitutionally singled out as targets for criminal restriction. We disagree. Respondents' argument ignores the subsections of these statutes that pertain to other distinct groups, *e.g.,* psychotherapists (Minn.Stat. §§ 609.344, subd. 1(h)(j) (2002), 609.345, subd. 1(h)–(j) (2002)); government and private correctional employees (Minn.Stat. §§ 609.344, subd. 1(m) (2002), 609.345, subd. 1(m) (2002)); and special transportation agents (Minn.Stat. §§ 609.344, subd. 1(n) (2002), 609.345, subd. 1(n) (2002)).[4] Like sexual

---

tool in establishment clause analysis."). *See Lynch v. Donnelly,* 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984).

**4.** Respondents' argument also ignores the statutes regulating other clerical activities. *See, e.g.,* Minn.Stat. § 517.05 (2002) (requiring clergy to file credentials before being au-

abuse committed by members of these other groups, sexual abuse committed by clerics during the course of their ministry is treated according to neutral principles of law. *See Odenthal*, 649 N.W.2d at 435 (citing *Jones v. Wolf*, 443 U.S. 595, 602–04, 99 S.Ct. 3020, 3025–26, 61 L.Ed.2d 775 (1979), for the holding that there is no entanglement problem when a dispute involving religious entities is resolved according to neutral principles of law and *Piletich v. Deretich*, 328 N.W.2d 696, 701 (Minn.1982), for the adoption of the neutral principles test in Minnesota).

We conclude that having courts determine whether the "advice, aid, or comfort" provided by a member of the clergy in private was "religious or spiritual" does not violate the Establishment Clause by fostering excessive governmental entanglement with religion.[5] We therefore reverse the district court's determination that Minn.Stat. § 609.344, subd. 1(*l*), and Minn. Stat. § 609.345, subd. 1(*l*), are facially unconstitutional as violations of the Establishment Clause.

### 3. Remanding Claims

■ Appellants argue that, if this court determines that sections 609.344, subdivision 1(*l*), and 609.345, subdivision 1(*l*), are not unconstitutional, appellants are entitled to summary judgment on their claims under these statutes because "F.P. has admitted all the elements of criminal sexual abuse." But the district court, having determined that the statutes were unconstitutional, did not have opportunity to consider whether the evidence, viewed in the light most favorable to F.P., showed

that there was no genuine issue of material fact that F.P.'s conduct after 1 August 1993 (the statutes' effective date) met every element of the statute. This court cannot review what the district court did not address. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988). Therefore, we remand appellants' claims under sections 609.344, subdivision 1(*l*), and 609.345, subdivision 1(*l*).

■ We also remand the claims for negligent hiring and retention, negligent supervision, loss of consortium, and strict liability. After granting respondents summary judgment on the claims under Minn. Stat. § 148A.02–03 and dismissing the claims under sections 609.344, subdivision 1(*l*), and 609.345, subdivision 1(*l*), the district court found that Mary Doe had not alleged the physical abuse or threat of physical abuse required for claims of negligent hiring and retention and negligent supervision, that Mary Doe had made no viable claim to support John Doe's derivative claim for loss of consortium, and that there was no statutory claim for sexual abuse to support a claim for strict liability. We remand these claims for district court consideration in light of however the district court decides the parties' summary judgment motions on the claims under sections 609.344, subdivision 1(*l*), 609.345, subdivision 1(*l*), and appellants' motion for leave to amend the complaint. As to the latter, the district court has broad discretion to grant or deny leave to amend a complaint, and its ruling will not be reversed absent a clear abuse of discretion. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). Whether the district court

---

thorized to solemnize a marriage); Minn.Stat. § 626.556, subd. 3(a)(2) (2002) (including clergy among mandated reporters of child abuse or neglect).

**5.** *See also Sanders v. Casa View Baptist Church*, 134 F.3d 331, 335–36 (5th Cir.1998)

("The First Amendment does not categorically insulate religious relationships from judicial scrutiny, for to do so would necessarily extend constitutional protection to the secular components of these relationships.").

has abused its discretion in ruling on a motion to amend may turn on whether it was correct in an underlying legal ruling. *See id.* at 762. Here, the district court was incorrect in its underlying legal ruling. We therefore reverse and remand the denial of appellants' motion for leave to amend in light of the district court's determination on their claims under the underlying statutes.

## DECISION

Because F.P. did not provide psychotherapy to Mary Doe within the meaning chapter 148A, the district court did not err in granting respondents summary judgment on claims under that chapter. Because we hold that sections 609.344, subdivision 1(*l*), and 609.345, subdivision 1(*l*), do not violate the Establishment Clause, we reverse the district court's conclusion that they are unconstitutional and remand the parties' other claims for adjudication.

**Affirmed in part, reversed in part, and remanded.**