# STATE OF MINNESOTA
# IN COURT OF APPEALS
## A16-0073
## A16-0258

U. S. Bank National Association, as trustee, successor-in-interest to
Bank of America, N.A., as trustee, successor to
Wells Fargo Bank, N.A., as trustee for the
Registered Holders of Wachovia Bank Commercial Mortgage Trust,
Commercial Mortgage Pass-Through Certificates, Series 2007-C30,
acting by and through its special servicer CWCapital Asset Management, LLC,
Respondent (A16-0073),
Appellant (A16-0258),

vs.

RBP Realty, LLC,
Appellant (A16-0073),
Respondent (A16-0258).

**Filed December 27, 2016**
**Affirmed**
**Johnson, Judge**

Ramsey County District Court
File No. 62-CV-14-2199

Thomas F. De Vincke, Kathleen M. Martin, Patrick B. Steinhoff, Malkerson Gunn Martin LLP, Minneapolis, Minnesota (for U.S. Bank National Association)

Edward P. Sheu, Bradley F. Williams, Best & Flanagan LLP, Minneapolis, Minnesota (for RBP Realty, LLC)

Considered and decided by Reilly, Presiding Judge; Halbrooks, Judge; and Johnson, Judge.

## S Y L L A B U S

A borrower's waiver of the statutory right to redeem foreclosed property in a foreclosure by advertisement is unenforceable.

# O P I N I O N

**JOHNSON**, Judge

A company borrowed $7,500,000 and executed a mortgage on commercial real property in favor of the lender. The company later defaulted on the loan. After the default, the borrower and the lender entered into a written pre-negotiation agreement, in which the borrower agreed to, among other things, waive its statutory right to redeem the mortgaged property in the event of a foreclosure sale. The lender later initiated a foreclosure by advertisement and then purchased the mortgaged property in the foreclosure sale for $4,250,000. The borrower sought to redeem the property, but the lender objected, relying on the borrower's waiver of its right to redeem. The district court ruled that, as a matter of law, the borrower's waiver of its right to redeem is unenforceable. We conclude that the district court was correct in that ruling. We also conclude that the district court did not err in deciding the other issues that have been raised on appeal. Therefore, we affirm.

## FACTS

In December 2006, RBP Realty, LLC, borrowed $7,500,000.00 from Wachovia Bank. In connection with the loan, RBP granted Wachovia a mortgage on commercial property in St. Paul known as Riverview Business Plaza. At the time of the loan, RBP also executed an assignment agreement, which gave Wachovia the right to receive rental income from the mortgaged property in the event of a default. Wachovia later assigned all of its interests in the note, the mortgage, and the assignment to a trust. U.S. Bank now is the trustee of that trust and, thus, is acting on behalf of the lender.

2

In June 2013, RBP defaulted on the loan. In September 2013, U.S. Bank and RBP entered into a five-page letter agreement, which they describe as a pre-negotiation agreement, to establish terms by which they would discuss a possible resolution of RBP's default. Paragraph 16 of the pre-negotiation agreement states, "Borrower waives its right of redemption . . . ." The parties proceeded to negotiate but did not reach a resolution. In March 2014, U.S. Bank initiated a foreclosure by advertisement. The notice of foreclosure sale states, "The time allowed by law for redemption by Mortgagor or Mortgagor's personal representatives or assigns is six (6) months after the date of sale."

U.S. Bank also pursued other means of recovering loan principal and interest. In April 2014, U.S. Bank commenced this action in district court, seeking the appointment of a limited receiver pursuant to section 576.25, subdivision 5(a), of the Minnesota Statutes. In June 2014, the district court appointed a limited receiver, with "all powers necessary and usual in such cases for the protection, possession, control, management, maintenance, and operation of the Property during the pendency of this action," and "all of the powers and authority usually of a limited receiver under Chapter 576 of the Minnesota Statutes and reasonably necessary to accomplish the purposes" of the receivership.

The sheriff conducted a foreclosure sale on July 23, 2014. At the time of the foreclosure sale, RBP owed U.S. Bank approximately $8,900,000. U.S. Bank, on behalf of the trust, submitted the highest bid of $4,250,000. In November 2014, RBP asked the sheriff for information about the amount needed to redeem the property. U.S. Bank refused to provide the sheriff with the redemption amount on the ground that RBP had waived its right to redeem. RBP brought a motion in which it argued that the district court's June

3

2014 order appointing the receiver had authorized RBP to redeem the property after a foreclosure sale. U.S. Bank moved to amend its complaint to add a request for a declaratory judgment that RBP's waiver of its right to redeem is enforceable. On December 29, 2014, the district court heard oral arguments on RBP's motion. Two days later, the district court ruled that RBP's waiver is unenforceable and granted RBP's motion, thereby allowing RBP to redeem the foreclosed property.

In early February 2015, RBP exercised its statutory right to redeem by paying $4,764,771.29 to the sheriff. The sheriff issued a certificate of redemption, which was recorded with the registrar of titles. In late February 2015, the district court denied U.S. Bank's motion to amend the complaint. On the same day, the district court issued an order terminating the receiver's possession and management of the property pending a final report and the discharge of the receiver.

In March 2015, the receiver submitted a final report to the district court and asked to be discharged. *See* Minn. Stat. § 576.38, subd. 2 (2016). RBP objected to three items in the final report that reflected disbursements to U.S. Bank. In November 2015, the district court overruled RBP's objections to the first and second items and sustained RBP's objection to the third item. In December 2015, the district court issued an order discharging the receiver and ordering the entry of final judgment.

U.S. Bank appeals from the December 2014 order, the February 2015 order, and part of the November 2015 order. RBP appeals from parts of the November 2015 order. We consolidated the appeals.

4

**ISSUES**

I.      Is RBP's waiver of its statutory right to redeem the mortgaged property enforceable?

II.     Did the district court err by denying U.S. Bank's motion to amend the complaint?

III.    Did the district court err in its rulings on RBP's objections to the receiver's disbursement of certain funds to U.S. Bank?

**ANALYSIS**

**I.**

In appeal A16-0258, U.S. Bank argues that the district court erred by ruling that RBP's waiver of its statutory right to redeem the mortgaged property in a foreclosure by advertisement is unenforceable.[1]

Foreclosure by advertisement is governed by chapter 580 of the Minnesota Statutes. The parties agree that no provision in chapter 580 speaks directly to the question whether

---

[1]U.S. Bank initially argues that we should reverse on the ground that this issue was not properly before the district court at the time of its ruling. Specifically, U.S. Bank argues that the enforceability of RBP's waiver cannot be determined in a receivership action. U.S. Bank did not preserve this argument by arguing to the district court that the issue was not properly before it, either in its motion papers or at the motion hearing. Rather, U.S. Bank addressed the issue on the merits. At oral argument in this court, U.S. Bank's attorney explained that U.S. Bank did not make such an argument to the district court because U.S. Bank had a motion pending in which it was seeking leave to amend its complaint to put the issue before the district court. We reject U.S. Bank's threshold argument on the grounds that the issue was presented to the district court without objection and that U.S. Bank was not prejudiced by the district court's consideration of an issue that U.S. Bank itself sought to put before the district court.

a mortgagor may waive the statutory right to redeem mortgaged property.[2] U.S. Bank contends that, in the absence of any such statutory provision, a lender and a borrower are free to enter into a contract that includes a waiver of the borrower's statutory right to redeem mortgaged property. U.S. Bank contends that the district court erred by "us[ing] the absence of any reference in Minnesota's foreclosure statute to post-default waivers of a mortgagor's redemption rights as an opportunity to effectively amend the foreclosure statute to affirmatively prohibit such waivers." In response, RBP contends that the absence of a statutory provision on the subject indicates that a borrower's statutory right to redeem is unqualified and may not be altered by contract.

The parties' arguments raise an issue of statutory interpretation. We begin the task of interpreting a statute by asking "whether the statute's language, on its face, is

---

[2]We note that a law on this specific issue was in force during the period shortly after statehood but no longer is in force. In the 1860 legislative session, a bill was enacted that provided, in relevant part, "Any person may, in writing executed and recorded in the same manner as mortgages are now executed and recorded, waive his right of redemption as allowed by this Act or any portion of said time of redemption." 1860 Minn. Laws ch. 87, § 3, at 276. The following year, the legislature amended the 1860 act so that it provided, "Any person may in writing, executed and recorded in the same manner as mortgages are now executed and recorded, waive (with the exception of one year's time) his right of redemption, as allowed by this Act, or any portion of said time of redemption. Any waiver of the right of redemption or any part thereof may be included in the instrument by which the mortgage is created." 1861 Minn. Laws ch. 20, § 1, at 181. Neither session law was intended to be codified. *See* 1861 Minn. Laws ch. 20, § 1, at 181; 1860 Minn. Laws ch. 87, § 3, at 276. The 1861 session law did not appear in the next codification of the statutes two years later. *See* 1863 Minn. Stat., ch. 81, §§ 1-22, at 692-97. The language of the 1861 session law also did not appear in the 1905 codification of the statutes, which was the result of a comprehensive revision of the state's statutes. *See Molde v. CitiMortgage, Inc.*, 781 N.W.2d 36, 40-43 & nn.1-2 (Minn. App. 2010) (describing history of 1905 revision with respect to chapter 580). Furthermore, the language of the 1861 session law does not appear in the current version of chapter 580 of the Minnesota Statutes. Thus, we presume that the 1861 session law is not presently in force.

6

ambiguous." *American Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn. 2001). A statute is unambiguous if it "is susceptible to only one reasonable interpretation." *Nelson v. Schlerer*, 859 N.W.2d 288, 292 (Minn. 2015). If a statute is unambiguous, we "interpret the words and phrases in the statute according to their plain and ordinary meanings." *Graves v. Wayman*, 859 N.W.2d 791, 798 (Minn. 2015). A statute is ambiguous, however, if it has "more than one interpretation." *Lietz v. Northern States Power Co.*, 718 N.W.2d 865, 870 (Minn. 2006). If a statute is ambiguous, we apply "the canons of statutory construction to determine its meaning." *County of Dakota v. Cameron*, 839 N.W.2d 700, 705 (Minn. 2013). We apply a *de novo* standard of review to a district court's interpretation of a statute. *Caldas v. Affordable Granite & Stone Inc.*, 820 N.W.2d 826, 836 (Minn. 2012).

Even though chapter 580 does not expressly answer the specific issue at the core of this appeal, the statute does contain some provisions that inform our analysis. A mortgagor's statutory right to redeem foreclosed property after a foreclosure sale is expressly stated in the following provision:

> When lands have been sold in conformity with the preceding sections of this chapter, *the mortgagor*, the mortgagor's personal representatives or assigns, *within six months* after such sale, except as otherwise provided in subdivision 2 or section 582.032 or 582.32, *may redeem* such lands, as hereinafter provided, by paying the sum of money for which the same were sold, with interest from the time of sale at the rate provided to be paid on the mortgage debt as stated in the certificate of sale and, if no rate be provided in the certificate of sale, at the rate of six percent per annum, together with any further sums which may be payable as provided in sections 582.03 and 582.031.

Minn. Stat. § 580.23, subd. 1(a) (2016) (emphasis added).  Restated in simple terms, the statute provides that, if no exceptions apply, a mortgagor may redeem foreclosed property within six months of a foreclosure sale.  *Id.*  Consistent with that principle, a certificate of foreclosure sale "must not contain a time allowed for redemption that is less than the time specified by section 580.23."  Minn. Stat. § 580.12 (2016).

The above-stated general rule is altered in only a few specified circumstances.  For example, a 12-month redemption period (rather than a 6-month period) applies in several specified situations, such as if a mortgage was executed before July 1, 1967; if the amount due at the time of the foreclosure sale is less than two-thirds of the original principal amount of the loan; or if the mortgaged property is in agricultural use and is between 10 and 40 acres in size.  *See* Minn. Stat. § 580.23, subd. 2(1), (2), (6) (2016); *see also id.*, subd. 2.  As another example, the redemption period may be shortened to as few as 2 months (but not eliminated) in the event of a voluntary foreclosure, so long as the mortgagee and mortgagor waive certain rights, the voluntary foreclosure agreement is recorded, and interested parties receive notice.  Minn. Stat. § 582.32, subds. 3(b), (c), 4a, 5 (2016).  Furthermore, a 5-week redemption period applies if the foreclosed property is 10 acres in size or smaller, contains a residential dwelling of fewer than 5 units, is not used in agricultural production, and is abandoned.  Minn. Stat. § 582.032, subd. 4 (2016).

Both parties urge us to interpret the statute based on its silence, but in different ways.  Generally, if "a statute is 'completely silent on a contested issue,'" a court should "not look beyond the statutory text to discern its meaning unless there is an 'ambiguity of expression' — rather than a 'failure of expression.'"  *State Farm Mut. Auto. Ins. Co. v. Lennartson*,

8

872 N.W.2d 524, 532 (Minn. 2015) (quoting *Rohmiller v. Hart*, 811 N.W.2d 585, 590 (Minn. 2012)). A statute's silence leads to an ambiguity of expression "if its 'silence renders the statute susceptible to more than one reasonable interpretation.'" *Id.* (quoting *Rohmiller*, 811 N.W.2d at 590). In this case, however, no ambiguity arises from the absence of a statement that a mortgagor may or may not waive the statutory right to redeem foreclosed property. No ambiguity arises on that particular issue because the statute expressly recognizes a mortgagor's general right to redeem. As stated above, chapter 580 generally provides that a mortgagor may redeem foreclosed property within six months of a foreclosure sale. Minn. Stat. § 580.23, subd. 1(a). Chapter 580 contains a limited number of exceptions to that general rule, but a private agreement between a mortgagor and a mortgagee is not among them. Because the statute expressly makes certain exceptions, "there is an implied exclusion of other[]" exceptions. *See City of Saint Paul v. Eldredge*, 800 N.W.2d 643, 648 (Minn. 2011). Thus, there is no exception that would defeat RBP's general right to redeem the foreclosed property in the circumstances of this case. U.S. Bank essentially asks this court to add language to chapter 580 that would create an exception to a mortgagor's statutory right to redeem. "Because ambiguity is not created by the statute's silence, we 'are not free to substitute amendment for construction and thereby supply the omissions of the Legislature.'" *Lennartson*, 872 N.W.2d at 533 (quoting *Rohmiller*, 811 N.W.2d at 590).

U.S. Bank also contends that we should follow caselaw from other states that has enforced a borrower's post-default waiver of the right to redeem mortgaged property. RBP contends in response that the foreign caselaw on which U.S. Bank relies is concerned with

9

the *equitable* right to redeem mortgaged property *before* a foreclosure sale, not the *statutory* right to redeem property *after* a foreclosure sale. RBP is correct that there is a meaningful distinction between the equitable right to redeem before a foreclosure sale and the statutory right to redeem after a foreclosure sale. *See* Thomas W. Bigley, Comment, *The Equity of Redemption: Who Decides When It Ends?*, 21 Wm. Mitchell L. Rev. 315, 315-27 (1995). The leading legal dictionary defines "equity of redemption" to mean the "right of a mortgagor in default to recover property before a foreclosure sale by paying the principal, interest, and other costs that are due," which stands in contrast to "a statutory right to redeem within six months after the foreclosure sale." *Black's Law Dictionary* 657 (10th ed. 2014). RBP also is correct that U.S. Bank's foreign caselaw is concerned solely with the equitable right of redemption.[3] The Minnesota Supreme Court has recognized that a borrower's equitable right of redemption may be waived or bargained away. *See, e.g.*, *O'Connor v. Schwan*, 190 Minn. 177, 179, 251 N.W. 180, 181 (1933); *De Lancey v. Finnegan*, 86 Minn. 255, 261, 90 N.W. 387, 390 (1902). But there is no such caselaw in Minnesota concerning the statutory right of redemption. For that reason, the foreign caselaw cited by U.S. Bank is inapplicable to this case.

Thus, the district court did not err by ruling that RBP's waiver of its statutory right to redeem is unenforceable.

---

[3]*See Hamud v. Hawthorne*, 338 P.2d 387, 390 (Cal. 1959); *Ringling Joint Venture II v. Huntington Nat'l Bank*, 595 So. 2d 180, 182 (Fla. Dist. Ct. App. 1992); *Russo v. Wolbers*, 323 N.W.2d 385, 388 (Mich. Ct. App. 1982); *Humble Oil & Ref. Co. v. Doerr*, 303 A.2d 898, 908 (N.J. 1973); *Skeels v. Blanchard*, 81 A. 913, 915 (Vt. 1911); *Batten v. Fallgren*, 467 P.2d 882, 884 (Wash. Ct. App. 1970).

**II.**

In appeal A16-0258, U.S. Bank argues that the district court erred by denying its motion to amend the complaint.

After a responsive pleading has been served, a plaintiff may amend the complaint "only by leave of court or by written consent of the adverse party," and "leave shall be freely given when justice so requires." Minn. R. Civ. P. 15.01. A plaintiff may not amend the complaint if the proposed amendment would be futile because it would serve no useful purpose. *Bridgewater Tel. Co. v. City of Monticello*, 765 N.W.2d 905, 915 (Minn. App. 2009); *Envall v. Independent Sch. Dist. No. 704*, 399 N.W.2d 593, 597 (Minn. App. 1987), *review denied* (Minn. Mar. 25, 1987). If a district court denies a motion to amend on the ground of futility, our review of the district court's ruling "may turn on whether it was correct in an underlying legal ruling." *Doe v. F.P.*, 667 N.W.2d 493, 500-01 (Minn. App. 2003), *review denied* (Minn. Oct. 21, 2003). This court generally applies an abuse-of-discretion standard of review to a district court's denial of a motion to amend the complaint. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993).

U.S. Bank requested leave to amend the complaint by pleading a request for a declaratory judgment that RBP's waiver of its statutory right to redeem is enforceable. The district court denied the motion on the ground that U.S. Bank's proposed amendment would be futile because the district court previously had ruled that RBP's waiver is unenforceable. On appeal, U.S. Bank asserts only one reason why the district court erred in denying its motion to amend: because RBP's waiver is *not* unenforceable. But U.S. Bank's sole

11

asserted reason is incorrect in light of our conclusion that the district court correctly determined that RBP's waiver is unenforceable. *See supra* part I.

Thus, the district court did not err by denying U.S. Bank's motion to amend the complaint.

**III.**

In their respective appeals, both U.S. Bank and RBP argue that the district court erred in part in its November 2015 order, which ruled on RBP's objections to the receiver's final report, which sought approval of the receiver's distribution of funds held by the receiver at the termination of the receivership.

In January 2015, after the district court had ruled that RBP could redeem but before RBP had completed the redemption, the receiver made a disbursement of approximately $362,000 to U.S. Bank. That amount consisted of all funds held by the receiver at that time except $10,000, which was withheld. After the receiver filed the final report, RBP asserted objections to the January 2015 distribution, including three objections concerning a total of approximately $159,000. The district court overruled RBP's objection concerning a refund of an insurance premium in the amount of approximately $41,000. The district court also overruled RBP's objection concerning approximately $67,000 in rental income that was received by the receiver before the foreclosure sale. But the district court agreed with RBP that, after accounting for rental income that is allocated to expenses, the receiver should have disbursed the remaining funds of approximately $50,000 to RBP. The parties challenge these three rulings on appeal.

**A.**

In appeal A16-0258, U.S. Bank argues that the district court erred by ruling that the receiver improperly disbursed the remaining funds in the receivership estate, $49,943.68, to U.S. Bank and by ruling that those funds should be returned to the receivership estate for distribution to RBP.

The issue is governed by the following statute:

> *Any sums collected that remain in the possession of the receiver at the termination of the receivership shall, in the event the termination of the receivership is due to the reinstatement of the mortgage debt or redemption of the mortgaged property by the mortgagor, be paid to the mortgagor*; and in the event termination of the receivership occurs at the end of the period of redemption without redemption by the mortgagor or any other party entitled to redeem, interest accrued upon the sale price pursuant to section 580.23 or 581.10 shall be paid to the purchaser at the foreclosure sale. Any net sum remaining shall be paid to the mortgagor, except if the receiver was enforcing an assignment of rents that complies with section 559.17, subdivision 2, in which case any net sum remaining shall be paid pursuant to the terms of the assignment.

Minn. Stat. § 576.25, subd. 5(f) (2016) (emphasis added).

U.S. Bank asserts two reasons why the district court erred. First, U.S. Bank argues that RBP is not entitled to the funds held by the receiver at the termination of the receivership because RBP waived its statutory right to redeem the mortgaged property. That argument is without merit because we have concluded that RBP's waiver is unenforceable. *See supra* part I.

Second, U.S. Bank argues that it is entitled to the funds held by the receiver at the termination of the receivership because of RBP's assignment of its rental income to U.S.

13

Bank. The assignment agreement states, "Lender may apply the Rents received by Lender from the Property . . . [1] against amounts expended for . . . expenses as Lender incurs in connection with the operation of the Property and [2] against interest, principal, required escrow deposits and other sums which have or which may become due . . . ." In response, RBP argues that, notwithstanding the language of the assignment agreement, U.S. Bank was entitled to utilize rental income from the property only to the extent that expenses were incurred, *i.e.*, only for the first purpose specified in the provision quoted here.

As a matter of law, RBP's debt to U.S. Bank was extinguished by the foreclosure sale in July 2014. *See* Minn. Stat. § 580.225 (2016). "[A]n assignment of rents will continue in effect after foreclosure, even if the foreclosure has fully extinguished the underlying mortgage debt, but only to the extent necessary to pay the ongoing expenses associated with maintaining the property, such as taxes, insurance, and repair costs, during the redemption period." *In re Brewery Ltd. P'ship*, 113 B.R. 992, 1002 (Bankr. D. Minn. 1990), *aff'd sub nom.*, *Page v. City of Duluth*, 945 F.2d 241 (8th Cir. 1991). This is so notwithstanding section 559.17, subdivision 2, which is cross-referenced in section 576.25, subdivision 5(f). *See id.* at 1001-02. Section 559.17, subdivision 2, is consistent with *In re Brewery Limited Partnership* and with the district court's ruling because it provides that a receiver "shall apply the excess cash in the manner set out herein from the date of appointment through the entire redemption period from any foreclosure sale." Minn. Stat. § 559.17, subd. 2(a) (2016). *See In re Brewery Ltd. P'ship*, 113 B.R. at 1001-02. Furthermore, the supreme court has recognized a lender's right to an assignment of rental income after a foreclosure sale only to the extent of the expenses incurred by the lender but

14

not to reduce the borrower's debt or any deficiency. *See, e.g.*, *G.G.C. Co. v. First Nat'l Bank*, 287 N.W.2d 378, 382 (Minn. 1979); *Cross Cos. v. Citizens Mortg. Inv. Trust*, 305 Minn. 111, 116-17, 232 N.W.2d 114, 117-18 (1975).

Thus, the district court did not err by ordering U.S. Bank to return $49,943.68 to the receivership estate.

**B.**

In appeal A16-0073, RBP argues that the district court erred by ruling that the receiver properly disbursed $67,639.01 to U.S. Bank to reflect rental income received between the appointment of the receiver in June 2014 and the foreclosure sale in July 2014.

The district court's order appointing the receiver provided that the receiver should remit rental income to U.S. Bank on a monthly basis. The receiver did not do so, and U.S. Bank did not request monthly remittances. The receiver did not remit any rental income to U.S. Bank until January 2015, when U.S. Bank so requested. The district court reasoned that, even though U.S. Bank was not entitled to rental income received after the foreclosure sale, it was entitled to rental income that had been received before the foreclosure sale:

> If the Receiver made the monthly excess cash disbursement for June as contemplated by the Receivership Order, Plaintiff could have received $67,639.01 to apply against the Indebtedness. This would have reduced the loss it took on the undersecured debt at the time of the foreclosure sale, and although there was no remaining Indebtedness in January, the Court believes it equitable for Plaintiff to retain that sum and reduce that loss as originally envisioned.

(Footnote omitted.)

15

RBP argues that the district court erred in its ruling on the ground that U.S. Bank is not entitled to any remittance of rental income after the foreclosure sale, even if the remittance is for rental income received before the foreclosure sale. In response, U.S. Bank argues that the district court did not err because its ruling merely enforced the June 2014 order appointing the receiver, which obligated the receiver to remit rental income on a monthly basis. The district court approved of the receiver's untimely remittance of $67,639.01 on the ground that it restored U.S. Bank and RBP to the positions they would have occupied if the receiver had made a timely remittance of rental payments received before the foreclosure sale. RBP has not demonstrated that the district court's ruling violated any applicable statute or caselaw.

Thus, the district court did not err by overruling RBP's objection to the receiver's disbursement of $67,639.01 in rents to U.S. Bank.

## C.

In appeal A16-0073, RBP argues that the district court erred by ruling that the receiver properly declined to seek to recover an insurance premium refund in the amount of $40,851.

Because of the cancellation of an insurance policy, an insurance company issued a refund of an insurance premium in December 2014. The insurer sent the refund to a servicing agent of U.S. Bank. The receiver believed that the refund belonged to U.S. Bank and, accordingly, determined that attempting to collect the refund from U.S. Bank's agent for purposes of paying the refund to U.S. Bank would not be a worthwhile use of

receivership resources. The district court overruled RBP's objection on the ground that the receiver was not grossly negligent.

RBP argues that the district court erred on the ground that U.S. Bank is not entitled to the insurance refund because the insurance premium itself was paid with RBP's funds. In response, U.S. Bank initially argues that the insurance premium was paid from an escrow account funded by both parties. U.S. Bank argues further that the receiver is not responsible for the disposition of the insurance refund because the receiver did not direct the insurer to send the refund to U.S. Bank's servicing agent and because the refund never was part of the receivership estate. U.S. Bank's second argument is consistent with the governing statute, which obligates the receiver, after a redemption, to pay to the mortgagor "sums collected that remain in the possession of the receiver at the termination of the receivership." *See* Minn. Stat. § 576.25, subd. 5(f) (2016). Because the funds at issue were neither "collected" by the receiver nor "remain[ing] in the possession of the receiver at the termination of the receivership," *see id.*, the receiver was not obligated to make such a payment to RBP.

Thus, the district court did not err by overruling RBP's objection concerning the $40,851 insurance premium refund.

## D E C I S I O N

The district court did not err by ruling that RBP's waiver of its statutory right to redeem the mortgaged property is unenforceable. The district court did not err by denying U.S. Bank's motion to amend the complaint. The district court did not err in its rulings on RBP's objections to the receiver's final report.

**Affirmed.**