*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-1128**

Julie Massaquoi, et al.,
Appellants,

vs.

Abe Al-Qudeh,
Respondent.

**Filed March 16, 2026**
**Affirmed**
**Frisch, Chief Judge**

Hennepin County District Court
File No. 27-CV-24-11636

Eric Bond Anunobi, Eric Bond Law Office, PLLC, West. St. Paul, Minnesota (for appellants)

Abraham S. Kaplan, Parker Daniels Kibort, Minneapolis, Minnesota (for respondent)

Considered and decided by Frisch, Chief Judge; Bentley, Judge; and Smith, John, Judge.[*]

**NONPRECEDENTIAL OPINION**

**FRISCH**, Chief Judge

Following the summary-judgment dismissal of their defamation claim against an owner of a residential rental property, appellants argue that the district court (1) erred by

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

determining that there were no genuine issues of material fact as to any element of the defamation claim and (2) abused its discretion by denying appellants' motion to amend the complaint to add "defamation by implication" as an alternative theory of relief. Because the record evidence taken in the light most favorable to appellants does not present any genuine issue for trial under the identified theories of defamation, we affirm.

## FACTS[1]

Appellants Julie Massaquoi and Lemuel Massaquoi rented a residential home (the home) from respondent Abe Al Qudah.[2] The Massaquois signed a 12-month rental agreement with Al Qudah for the home that began on August 1, 2022, and they entered a second 12-month rental agreement that began on September 1, 2023. The Massaquois operated a nursing-home business, appellant Thrive Health Services LLC, out of the home.[3]

In November 2023, Al Qudah provided the Massaquois with notice that someone would be taking photos in preparation for listing the property for sale. Al Qudah had

---

[1] The following undisputed facts are drawn from the district court's order granting summary judgment and are taken in the light most favorable to the Massaquois as the nonmoving party.

[2] The case caption in the district court identified respondent as "Al-Qudeh." But respondent is identified in his appellate brief as "Al Qudah." The caption of this opinion conforms to the caption used in the district court. *See* Minn. R. Civ. App. P. 143.01. But we use respondent's indicated spelling throughout the body of the opinion.

[3] While not relevant for purposes of this appeal, we note that the operation of a nursing-home business appears to plainly violate the rental agreement, which expressly limited use of the property to a "private residence" and required the Massaquois to use it "only for residential purposes."

previously offered to sell the home to the Massaquois, who declined the offer. A realtor thereafter took pictures of the interior and exterior of the home for the purpose of listing the home for sale. The home was listed for sale on several residential home real estate websites.

The Massaquois terminated the rental agreement and commenced this action against Al Qudah alleging three counts of defamation—one count for each appellant. The complaint alleged that the photos of the home on real estate websites generated posts from "millions of google patrons variously describ[ing] [the Massaquois'] business as a scam."

Al Qudah moved for summary-judgment dismissal of the Massaquois' complaint. On the same day, the Massaquois' counsel sent a letter to the district court requesting to extend certain deadlines, including the deadline for non-dispositive motions. The district court's initial scheduling order had set a deadline of March 26, 2025, for all non-dispositive motions, including motions to amend the pleadings. The district court filed an amended scheduling order extending the deadline for non-dispositive motions to be heard on or before May 5, 2025.

On April 11, the Massaquois moved to amend the pleadings. On April 16, the district court held an off-the-record status conference. According to the district court in its summary-judgment order, during the conference:

> [The Massaquois'] counsel represented that the proposed amendments were to provide some additional detail on the lease and to provide additional information on damages. In the sworn words of [the Massaquois'] counsel, "The amendment is intended to correct errors regarding the period of the initial lease agreement between the parties. The amendment also seeks to include claims for special and general damages, a

permanent injunction as well as a demand for a public apology against the defendant."

The district court instructed the parties to work out an agreement to add these provisions. If the parties did not reach an agreement, the district court would also hear the motion to amend at the summary-judgment hearing on May 9, four days after the motion deadline. The parties did not reach such an agreement.

Instead, on April 25, the Massaquois filed what they described as a "second amended notice of motion and motion to amend complaint." Without leave of district court, they noticed this motion to be heard at the May 9 summary-judgment hearing, four days after the motion deadline. The affidavit of the Massaquois' counsel submitted with this filing included as an exhibit a new proposed amended complaint. In this proposed amended complaint, instead of solely providing additional information regarding the lease and damages as discussed at the April 16 conference, the Massaquois added "defamation by implication" as an additional count and to their description of the prayer for relief. Al Qudah opposed the Massaquois' second motion as untimely and prejudicial.

The district court held the hearing on May 9, and the parties argued their respective motions. On May 13, the district court filed an order granting Al Qudah's motion for summary judgment and denying the Massaquois' motion to amend the complaint. The district court concluded that the Massaquois' motion to amend the complaint to include "defamation by implication," whether understood as an alternative theory of liability for the underlying defamation claim or an additional cause of action, was both untimely and futile. The district court concluded that neither the underlying defamation claim set forth

4

in the Massaquois' original and amended complaints nor the proposed "defamation by implication" claim included in the amended complaint survived summary judgment, as the Massaquois failed to establish a genuine issue of material fact as to any element of defamation.

The Massaquois appeal.

**DECISION**

**I. The Massaquois failed to produce evidence establishing a genuine issue for trial on their defamation claim.**

The Massaquois argue that the district court's summary-judgment dismissal of their complaint was improper because genuine issues of material fact exist on each element of their claim for defamation. We disagree.

We review a district court's grant of summary judgment de novo. *Montemayor v. Sebright Prods., Inc.*, 898 N.W.2d 623, 628 (Minn. 2017). "In doing so, we determine whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010); *see also* Minn. R. Civ. P. 56.01. "A genuine issue of material fact exists when there is sufficient evidence regarding an essential element to permit reasonable persons to draw different conclusions." *St. Paul Park Refin. Co. v. Domeier*, 950 N.W.2d 547, 549 (Minn. 2020) (quotation omitted); *see also Doe v. Archdiocese of St. Paul*, 817 N.W.2d 150, 163 (Minn. 2012) ("[I]n order to establish that there is a disputed material fact, the party against whom summary judgment was granted must present specific admissible facts showing a material fact issue." (quotation omitted)).

5

On appeal from the entry of summary judgment, we view the evidence in the light most favorable to the nonmoving party and resolve any doubts as to the existence of a material fact in that party's favor. *Senogles v. Carlson*, 902 N.W.2d 38, 42 (Minn. 2017). The nonmoving party "may not establish genuine issues of material fact by relying upon unverified and conclusory allegations, or postulated evidence that might be developed at trial, or metaphysical doubt about the facts." *Dyrdal v. Golden Nuggets, Inc.*, 689 N.W.2d 779, 783 (Minn. 2004). "A defendant is entitled to summary judgment as a matter of law when the record reflects a complete lack of proof on an essential element of the plaintiff's claim." *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995).

To establish the elements of a defamation claim, a plaintiff must prove that: (1) the defendant communicated a statement to a third party, (2) the statement is false, (3) the statement tends to harm the plaintiff's reputation and to lower the plaintiff in the estimation of the community, and (4) the recipient of the false statement reasonably understands it to refer to a specific individual. *McKee v. Laurion*, 825 N.W.2d 725, 729-30 (Minn. 2013). "Defamation by implication" has not been recognized as a separate cause of action under Minnesota law, but we have recognized it as an alternative theory of liability "when a defendant (1) juxtaposes a series of facts to imply a defamatory connection between them; or (2) creates a defamatory implication by omitting facts." *Metge v. Cent. Neighborhood Improvement Ass'n*, 649 N.W.2d 488, 498 (Minn. App. 2002), *petition for rev. dismissed* (Minn. Oct. 15, 2002). The supreme court has held that whether a defamatory meaning is conveyed depends on how an ordinary person understands the language given the "surrounding circumstances." *McKee*, 825 N.W.2d at 731. If the statements cannot be

6

ordinarily understood as defamatory, summary judgment is appropriate. *Schlieman v. Gannett Minn. Broad., Inc.*, 637 N.W.2d 297, 308 (Minn. App. 2001).

The Massaquois' defamation claim is predicated on the publication of interior photos of the home rented from Al Qudah. The Massaquois contend that the publication of those photos in a real estate listing identifying the address of the home, at a time when the Massaquois were advertising and soliciting new clients for their business, communicated a false and defamatory statement to third parties to the effect that the Massaquois' business was for sale and was a scam. We are not convinced.

Assuming that the publication of the real estate listing is attributable to Al Qudah, the Massaquois have not presented a genuine issue for trial that such publication could be capable of being understood as communicating the false statement that the Massaquois' business was for sale or a scam—either on its face or by implication. The Massaquois do not dispute that the house was for sale, and they do not dispute that the photos included in the real estate listing are true and authentic photos of the home and some of its contents.[4] The Massaquois do not identify any affirmative misrepresentation in the real estate listing itself. The listing did not provide that the contents of the premises or the business operating on the premises were for sale. Indeed, the listing did not reference or identify the

[4] The Massaquois emphasize in their appellate briefing that they did not consent to photographing the interior of the home, and, at oral argument, argued that Al Qudah failed to provide them with notice that photos of the interior of the home would be taken. We note that it appears from the record that there is no genuine dispute that Al Qudah complied with the notice provisions set forth in the rental agreement. But even taking these assertions as true, the Massaquois provide no argument or authority as to why their consent to such photos is relevant to their defamation claim.

7

Massaquois or their business in any way. Nor do the Massaquois allege any facts that Al Qudah purportedly juxtaposed or omitted within the real estate listing information to create any implication that the Massaquois' business was for sale.[5]

And the Massaquois failed to produce evidence that third parties understood the publication to communicate a statement referring to the Massaquois or their business. For purposes of summary judgment, the Massaquois produced a single undated, unverified online comment credited to "Johnny diecast." The comment stated: "It's a scam no one is ever[] here always an empty house. Now it's up for sale."[6] While the Massaquois assert that they intended to provide witnesses at trial to testify how they "were shocked by the publication and who in turn regarded [the Massaquois'] business as a scam or fraudulent," the Massaquois cannot defeat summary judgment by relying upon "postulated evidence that might be developed at trial." *Dyrdal*, 689 N.W.2d at 783.

Further, the Massaquois did not produce evidence of damages. The record is devoid of evidence showing that the publication communicated a statement that tends to harm the Massaquois' reputation or lower them in the estimation of the community. *See Richie v. Paramount Pictures Corp.*, 544 N.W.2d 21, 28 (Minn. 1996) (stating that "Minnesota law

---

[5] At oral argument, counsel for the Massaquois conceded that there was no evidence that Al Qudah had knowledge that the Massaquois were advertising and soliciting new clients for their business.

[6] Before the district court, the Massaquois appeared to present this online comment as an additional false and defamatory statement on which their defamation claim was based. However, the Massaquois did not allege that this statement was made by Al Qudah and produced no evidence that would support any such finding. On appeal, the Massaquois identify this online comment as support for their contention that the publication of the real estate listing harmed their reputation and was understood by the public to refer to them.

imposes a reputational harm prerequisite in defamation actions"). The Massaquois assert they were "forced to incur expenses rebutting" claims by online reviewers that their business was a scam because the home had been advertised for sale, but again, they produced no evidence to support that assertion. We are unconvinced that the mere publication of unaltered photos of the interior of a house within a real estate listing could ordinarily be understood to imply that a business operating within such home is for sale or a scam. *See McKee*, 825 N.W.2d at 731 (holding that whether a defamatory meaning is conveyed depends on how an ordinary person understands the communication given the "surrounding circumstances" (quotation omitted)). We are similarly unconvinced by the Massaquois' suggestion that an ordinary person who searches online for the address of the Massaquois' business and finds a real estate listing for the home would conclude that the business that operated within that home was for sale and a scam, rather than concluding—correctly—that only the home was for sale.

The Massaquois summarily assert in their appellate briefing that "[d]efamation affecting a plaintiff's 'business, trade, profession, office or calling' is defamation *per* se," stating that "[t]here is at a minimum, a genuine issue of material fact as to whether or not defendant published a false statement to the public of and concerning the business of the plaintiffs." We agree that "[s]tatements that we have recognized as defamatory per se include 'false accusations of committing a crime and false statements about a person's business, trade, or professional conduct.'" *Maethner v. Someplace Safe, Inc.*, 929 N.W.2d 868, 875 (Minn. 2019) (quoting *Becker v. Alloy Hardfacing & Eng'g Co.*, 401 N.W.2d 655, 661 (Minn. 1987)). However, for the reasons identified above, we disagree with any

9

characterization that the real estate listing is capable of being understood as a false statement about the Massaquois' business. *Cf. id.* (stating that the supreme court agreed with the appellant that "some of the challenged statements here, when viewed in the light most favorable to him, could be capable of being understood as accusing him of a crime").

Thus, the district court properly granted summary judgment dismissing the Massaquois' defamation claim because they failed to produce evidence establishing a genuine issue for trial.

## II. The Massaquois' amended complaint was futile and untimely.

The Minnesota Rules of Civil Procedure provide that "a party may amend a pleading only by leave of court or by written consent of the adverse party" if outside the time frame to amend a pleading as a matter of course, and "leave shall be freely given when justice so requires." Minn. R. Civ. P. 15.01. Generally, "amendments should be freely granted, except where to do so would result in prejudice to the other party." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993). In determining whether the nonmoving party would be prejudiced, the district court considers various factors, including: (1) the stage of the proceeding; (2) whether "substantial delay" will result; and (3) whether the amendment states a "cognizable legal claim." *Envall v. Indep. Sch. Dist. No. 704*, 399 N.W.2d 593, 597 (Minn. App. 1987), *rev. denied* (Minn. Mar. 25, 1987). "A plaintiff may not amend the complaint if the proposed amendment would be futile because it would serve no useful purpose." *U.S. Bank Nat'l Ass'n v. RBP Realty, LLC*, 888 N.W.2d 699, 705 (Minn. App. 2016), *rev. denied* (Minn. Apr. 18, 2017). An amendment is futile when a proposed claim could not survive summary judgment. *See Rosenberg v. Heritage Renovations, LLC*,

685 N.W.2d 320, 332 (Minn. 2004) ("[T]he court should deny a motion to amend a complaint where the proposed claim could not withstand summary judgment.").

"The decision whether to permit a party to amend pleadings rests within the discretion of the trial court and will not be reversed in the absence of clear abuse of such discretion." *Warrick v. Giron*, 290 N.W.2d 166, 169 (Minn. 1980). "If a district court denies a motion to amend on the ground of futility, our review of the district court's ruling 'may turn on whether it was correct in an underlying legal ruling.'" *U.S. Bank*, 888 N.W.2d at 705 (quoting *Doe v. F.P.*, 667 N.W.2d 493, 500-01 (Minn. App. 2003), *rev. denied* (Minn. Oct. 21, 2003)).

As a threshold matter, and based on our analysis set forth above, amendment of the pleadings to add a claim of defamation by implication would have been futile. *See Rosenberg*, 685 N.W.2d at 332. The district court therefore did not abuse its discretion in denying the motion to amend.

Even so, and independently, the district court did not abuse its discretion by denying the amendment as untimely.[7] The district court reasoned that the Massaquois' request to

---

[7] In their appellate briefing, the Massaquois contend that "[b]y declining to allow [them to] move their second notice of motion to amend complaint and by disallowing their Second Amended Complaint, the trial court essentially violated the due process rights of the [Massaquois] in so far as it involved Notice and a Fair hearing." First, we note that the district court expressly considered the Massaquois' second proposed amended complaint in reaching its determination on their motion to amend. Second, we note that although the Massaquois use the words "due process" and cite *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), they make no arguments evaluating the *Mathews* three-factor balancing test applicable to alleged due-process violations, and their brief is predominantly focused on the argument that the district court should have allowed them to amend their complaint under Minn. R. Civ. P. 15.01 because doing so would not be prejudicial to Al Qudah.

11

amend the complaint was untimely under the scheduling order and sought to add an alternative theory of liability on the day discovery closed. The district court's scheduling order required all non-dispositive motions, including motions to amend the pleadings, to be scheduled to be heard on or before May 5. The Massaquois did not seek or obtain permission from the district court to schedule for May 9 the second motion to amend the complaint to add "defamation by implication" as a theory of relief. The Massaquois did not explain why they waited eight months into the litigation to move to amend—after the completion of discovery and while dispositive motions were pending. *See Envall*, 399 N.W.2d at 597 (providing that the stage of the proceeding is relevant to consider when determining whether a proposed amendment would be prejudicial). The district court's denial of the motion as untimely is not an abuse of discretion under these circumstances.

**Affirmed.**